TERRITORY OF HAWAII *v.* JOHN F. PIERCE, EDWARD CONROY, EDDIE HAGEN, JOHN J. MILLER, MARGARET KALUNA, JOE DOE, AKA PABLO SABARON, JOHN DOE, AKA JUICHI TAKAOKA, MARY ROE, AKA LORRAINE F. BAKER, AND MARY DOE, AKA GENEVA J. PIERCE.

No. 4091.

SUBMITTED MAY 5, 1959.                    DECIDED MAY 19, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

The nine defendants herein were found guilty in the circuit court of the first circuit of a violation of chapter 288, section 2, Revised Laws of Hawaii 1955, for maintaining and conducting a lottery. The defendants were all charged in separate informations with assisting in maintaining and conducting a lottery known as "Aloha Quiz" upon premises situate at 1055 Alakea street in Honolulu. A plea of not guilty was entered in all nine cases which were consolidated for a jury trial which took place June 23, 24 and 25, 1958. All were found guilty by the jury. The case comes to this court upon bill of exceptions and has been submitted upon the briefs filed herein.

Before discussing the circumstances surrounding the present charges against the defendants and the question as to whether such a game as hereinafter described is a lottery, we shall call attention to the alleged errors brought before this court by the defendants in the bill of exceptions.

Defendants allege in their brief that the lower court erred in giving the Territory's instructions numbered 6, 7 and 8, and in failing to give defendants' instruction number 5.

From the transcript it appears that the defendants objected to the Territory's instructions and the failure to give their own instruction, but failed to except to the rulings of the trial judge thereon.

Section 212-14 of the Revised Laws of Hawaii 1955 provides, in part, "But no order, judgment or sentence shall be reversed or modified unless the court is of the opinion that error was committed which injuriously affected the substantial rights of the plaintiff in error. Nor shall there be a reversal * * * for any alleged

error in the admission or rejection of evidence or the giving of or refusing to give an instruction to the jury unless such alleged error was made the subject of an exception noted at the time it was committed."

While the Hawaii Rules of Civil Procedure provide that "formal exceptions to rulings or orders of court are unnecessary," such is not now the case in any criminal proceeding in Hawaii, although the rules of criminal procedure hereafter to be adopted when promulgated may contain such provisions.

It is well settled that in the absence of a statutory provision or court rules, both an objection and exception are necessary in the trial court to present the judge's ruling for review in the upper court.

It was stated in *Misenheimer* v. *State*, 84 S. W. 494 (1904), that:

> "An objection precedes an exception. The objection calls for a ruling by the trial court, and the exception directs attention to and fastens the objection for a review on appeal. If a party does not follow the ruling on his objection by clinching it with an exception, he waives the objection."

To a like effect see *Ford* v. *State*, 257 S. W. (2d) 30 (1953), quoting from *Yarbrough* v. *State*, 206 Ark. 549, 176 S. W. (2d) 702, 703, wherein the court stated:

> "On appeal from the circuit court, this court only reviews errors appearing in the record. The complaining party must first make an objection in the trial court, and this calls for a ruling on his objection. An exception must then be taken to an adverse ruling on the objection, which 'directs attention to and fastens the objection for a review on appeal.' "

> "The object of an exception as contemplated by the statute is to bring to this Court a specific question of law upon which the trial court has erroneously ruled to the prejudice of the party excepting, and not to enable a party to cast the entire case upon the court for review." (*Fraga* v. *Portuguese Mut. Ben. Soc.*, 10 Haw. 128, 129.)

> "One of the essential purposes of an exception is, that the

attention of the trial court is thereby specifically called to a particular point of law going to the legal sufficiency of the ruling made, thus affording the court an opportunity to correct the supposed error." (*Ripley & Davis* v. *Kapiolani Estate,* 22 Haw. 507, 509.)

See also *Kaehu* v. *Namealoha,* 20 Haw. 350, and *Scott* v. *Kona Development Co.,* 21 Haw. 258, 263.

The defendants did take a written exception to the verdict of the jury on the grounds it was contrary to the law, the evidence, and the weight of the evidence. However, this point was not argued in the briefs so consequently we deem it was abandoned. But even had it not been abandoned, such an exception brings no specific question of law which has been presented to the trial court and therefore cannot be considered on appeal.

Under the Seventh Amendment to the Constitution of the United States, no fact tried by a jury shall be otherwise reexamined in any court of the United States than according to the rules of the common law. See the opinion of Mr. Justice Sanborn in *Thompkins* v. *Missouri etc. R. R.,* 211 Fed. 391, relative to the common-law review of verdicts of a jury on exceptions. Under the provisions of the Seventh Amendment to the Constitution of the United States, verdicts may be reviewed on exceptions at common law only in the following cases: (1) granting or refusing a motion for a directed verdict; (2) a motion for a new trial; (3) a demurrer to the evidence; or (4) granting or refusing of a nonsuit. Authorities to this effect are exceedingly numerous.

Thus, the actions of an appellate court are limited to the rulings of *law* of the trial judge in granting or refusing instructions or the granting or overruling of motions referred to.

For the reasons above stated, the judgment should be affirmed.

However, as the Territory considers it highly important to have the question determined of whether the game described as "Aloha Quiz" comes within the law against lotteries, we shall discuss this phase of the case herein.

According to the evidence, the so-called "Aloha Quiz" is a game played with cards, markers and numbers. It is similar in all respects

to the game commonly known as "Bingo," with the addition of a question asked the successful contestant before the money prize is actually delivered to such winner. The defendants make the claim that the game is one of skill, that is, answering the question asked, and is not the result of chance. The Territory contends that the question is merely a subterfuge imposed on the ordinary game of Bingo.

As in the game of Bingo, the "Aloha Quiz" uses cards, square in shape, containing 24 numbers set off at random in individual squares, of which there are 25. The 25th, located in the center of the card, does not have a number. This center contains the words "Aloha Quiz" and is utilized as a "free" square or number.

These cards are purchased by participating players from appellants, operators of the game, for a price. The participants can play or use as many of these cards in a given game as they choose to purchase at a cost of 25 cents for 2 cards, 50 cents for 4 cards. The game proceeds exactly as in Bingo, with the drawing of numbered ping-pong balls, one at a time, from the cylindrical container by one of the operators who calls out to the players the number he has drawn. Each of the participants consults his card or cards to see if the number drawn corresponds with any of the numbers on his card. If there is such a number on his card, the player marks that number with a marker over the square containing that number. The drawing of numbers continues until one or more participating players succeeds in marking off 5 squares in a row corresponding with any of the numbers drawn. When one of the player's cards contains 5 squares so marked off in a straight line, from top to bottom, side to side, or diagonally, the player signifies this by shouting "Aloha" which stops the game. One of the attendants then checks the numbers and if there is no error in the marked-off numbers, such attendant asks the winner a question and then pays the money prize in various amounts up to the sum of $25. Thereafter, another game begins.

Mr. Francis Keala, an undercover man for the police department, who investigated the game, testified he saw 15 such players win and that the money prize was given to the winner in each case and he did not see any of the winners fail to receive the money.

One of the players, Jose Visco, a winner, stated that one of the

attendants approached him and asked him the question as to how many pins there were in a bowling alley. He answered "twelve" and the attendant said "no." Then he answered "eleven" and she again said "no." Then he said "ten" which was the correct answer and he received the money. At another time when he won he was asked a question as to what was the largest city in the Territory and he answered "Honolulu" and received the money. However, two witnesses for the defendants did testify they filled their squares but when they failed to answer the question asked, they were not paid any prize.

There were 4 long tables accommodating 22 persons each, and 2 smaller tables. An estimate was made by a witness to the effect that when he attended there were about 120 participants in the game. The operators employed a barker or caller, floor attendants and other such employees to distribute cards, collect money, etc. Obviously it was a very large business and, no doubt, highly profitable.

Section 288-1, Revised Laws of Hawaii 1955, defines a lottery as follows:

> "A lottery is any scheme for the disposal or distribution of property by chance among persons who have paid or promised to pay any valuable consideration for the chance of obtaining the property, or a portion of it, or for any share or any interest in the property upon any agreement, understanding or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, che fa, pakapio, gift enterprise or by whatever name the same may be known."

It has often been said that no sooner is a particular game or device defined by the court as a lottery than ingenuity evolves some scheme within the mischief contemplated although not quite within the letter of the definition given; however, the courts will inquire not into the name, but into the game, no matter how skillfully disguised, in order to ascertain if it is prohibited or if it has the element of chance. The number of such schemes is legion. Even where a contest is multiple or serial and requires a solution of problems to win the prize does not make the contest any the less

a lottery if chance enters into another part of the problem and influences the final result. (*McKittrick* v. *Globe-Democrat Publishing Co.*, 341 Mo. 862, 110 S. W. [2d] 705 [1937].)

"* * * as showing the strong trend of judicial thought in this country against lottery enterprises, the court said that it will appear from the many cases decided upon the subject, to be difficult, if not impossible, for the most ingenious and subtle mind to devise any scheme or plan, short of a gratuitous distribution of property, which has not been adjudged as in violation of the lottery or gambling laws of the various states, which are mostly alike. And we say that, no sooner is a lottery defined, and the definition applied to a given state of facts, than ingenuity is at work to evolve some scheme of evasion which is within the mischief, but not quite within the letter, of the definition. But, in this way, it is not possible to escape the law's condemnation, for it will strip the transaction of all its thin and false apparel and consider it in its very nakedness. *It will look to the substance, and not to the form of it,* in order to disclose its real elements and the pernicious tendencies which the law is seeking to prevent. The court will inquire, not into the name, but into the game, however skilfully disguised, in order to ascertain if it is prohibited, or if it has the element of chance." (*State* v. *Lipkin*, L. R. A., 1915 F, 1018, 1022.)

The puerile effort on the part of defendants to avoid the consequences of a "bingo" lottery by the hocus-pocus of whispering a question to the winner of the bingo game apparently assumes, in the words of Mr. Bumble, that "If the law supposes that, the law is a ass, a idiot," and that the judge when he ascends the bench and the jurors when they enter the jury box leave behind all intelligence and common sense.

Affirmed.

*Earl S. Robinson* (*Fong, Miho, Choy & Robinson* with him on the briefs) for defendants-appellants.

*John H. Peters,* Public Prosecutor, City and County of Honolulu, and *Frederick J. Titcomb,* Assistant Public Prosecutor, for plaintiff-appellee.