# STATE OF HAWAII *v.* HAROLD H. CHANG AND EDWARD P. TONER.

## No. 4202.

JULY 20, 1962.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, JJ., CIRCUIT JUDGE
HEWITT IN PLACE OF LEWIS, J., DISQUALIFIED, AND
CIRCUIT JUDGE TASHIRO IN PLACE OF MIZUHA,
J., DISQUALIFIED.

Appellants Harold H. Chang and Edward P. Toner were charged with conspiracy in the first degree in a single count indictment alleging that sometime prior to August 4, 1959, they mutually undertook and conspired to commit the offense of gross cheat with intent to defraud the City and County of Honolulu of more than $100 by "a scheme whereby false and fraudulent claims for the delivery of and payment for Incontinent Pads to Maluhia Hospital were made to said City and County of Honolulu." Having been found guilty of the charge by a jury, they have appealed the conviction by writ of error.

There are sixty-eight errors assigned in appellants' joint assignment of errors. It is some relief therefore to note that forty-two of the assignments have not been carried into appellants' specifications of error. We will be concerned chiefly with the first and last of the twenty-six specifications set out in the opening brief.

The assignments of error attacking the sufficiency of the evidence are patently without merit and are among those culled by appellants in the preparation of their specifications of error. The appeal has been submitted on briefs without oral argument. While any issue on the sufficiency of the evidence must therefore be deemed abandoned (*Stewart* v. *Spalding*, 26 Haw. 162, 163-164; *Territory* v. *Low*, 35 Haw. 571, 572), a resume of the salient facts seems desirable, at least for understanding and disposition of appellants' specification of error No. 26.

Maluhia Hospital (hereinafter referred to as "Maluhia") is maintained by the City and County of Honolulu under the direction of the City and County Physician. Defendant Toner was the Administrator of the hospital. He directly supervised its maintenance and operation. Other members of the managerial staff who are to be considered are the assistant administrator, James Ono,

the budgetary accountant, Hiroshi Yoshida, and the store-keeper, Charles Tanaka.

The Defendant Chang was the chief stockholder and manager of Reagents Company, Ltd., a corporation. (It will be referred to as "Reagents"). With the exception of minor secretarial services performed by part time or temporary help, he personally attended to and conducted all of the business of the Company during the period involved in this case.

The prosecution's proof related to fifteen separate transactions between Reagents and the City and County occurring between August 4, 1957 and August 4, 1959. The transactions were evidenced by copies of pertinent official documents used and kept by the municipality in the regular course of business. This documentary evidence, as tabulated and explained by an auditor's testimony, shows that during the two-year period covered by the audit, 2,700 cases of incontinent pads were ordered from Reagents for Maluhia. The separate orders were usually in 200-case lots at prices generally between $13.50 and $14.00 per case and the total amount paid on the fifteen orders was slightly in excess of $27,000.00. This evidence also shows that during the two-year period only 1,663 cases of pads were delivered to Maluhia by Reagents and that the City and County had paid Reagents a total of $13,807.23 for 1,037 cases which were not delivered.

Under procedure prescribed for all departments of the City and County of Honolulu, a purchase of goods for Maluhia had to be initiated by the issuance of a requisition with copies thereof forwarded to the Purchasing Department of the City and County. After soliciting bids, that department would issue a purchase order to the successful bidder who, with or after delivery of the goods, would submit a copy of the purchase order and his invoice to Maluhia. Issuance by the City and County Auditor of

a warrant for payment of the goods would follow upon his receipt from Maluhia of a summary of the claim with certification that its payment was in order.

Summaries of claims for purchases made for Maluhia were prepared and initialed by Yoshida and signed by the City and County Physician and by Toner. A requisite to certification of any claim for payment was an endorsement on one of the copies of the purchase order stating that the goods in the quality and quantity as ordered had been received. Another incident of normal purchasing practice called for furnishing Tanaka, the hospital's storekeeper, with a copy of the requisition when it was issued.

It was the testimony of Yoshida and Ono that, on directions from Defendant Toner they put through six of the orders for bed pads on what was termed a "Q. T." basis. They said that in connection with processing Q. T. orders they were instructed to keep the storekeeper, Tanaka, "in the dark" by not following the customary practice of furnishing him with a copy of the requisition. Also, that with Q. T. orders the required acknowledgment of the receipt of the pads ordered was falsely made by Yoshida signing "Tanaka per H. Y." on the line designated "Individual Receiving Goods or Services" appearing under the certification of receipt of goods as ordered on the copy of the purchase order accompanying the summary of claims. According to the testimony of Ono and Yoshida no delivery of bed pads was expected on a Q. T. order. With such an order the transaction was considered and treated as closed when payment was made to Reagents.

Some eight of the fifteen purchase orders with Reagents were identified and classified by the two witnesses as being "Advance Payment" orders. This type of purchase was processed in the same manner as a Q. T. order and full payment was made prior to delivery of any of the pads ordered. However, with the Advance

Payment orders it was understood that deliveries would eventually be made by Reagents and the evidence shows that in most cases Advance Payment orders were subsequently filled by deliveries made in small-lot installments extending over varying periods of time. It was the testimony of the two witnesses that these Advance Payment purchases were also put through on directions from Toner. Only one of the fifteen transactions with Reagents was identified as being an outright regular purchase in which delivery preceded payment. Yoshida and Ono testified that no other dealer furnishing supplies to Maluhia was ever paid before delivery.

There was no evidence of any confession from either defendant but the prosecution's case included proof of various incriminating admissions made by each of the defendants to different individuals called as witnesses. Both defendants testified. Each denied making the admissions attributed to him by the witnesses called by the prosecution.

From informal records he kept for Reagents, Chang confirmed the shortage in deliveries of bed pads as proven in the prosecution's case in chief. In fact he testified that the running account he kept showed 1,646 as the number of undelivered cases at the end of the two-year period covered by the audit. By his count Reagents was already 609 cases in arrears at the beginning of the audit period on August 4, 1957.

It was Chang's testimony that he had requested and Toner had consented to prepayment of the orders for bed pads. He said that it had always been his intention that delivery would be made on the orders—that all orders were taken with intention to make delivery but that he had difficulty in obtaining the bed pads from the manufacturer on time. He specifically denied any fraudulent concert with Toner or anyone else in connection with the

orders of bed pads for Maluhia. His stand was that the liability for the nondeliveries was civil and not criminal. He admitted that in none of the financial statements prepared by him for Reagents was there any off-setting entry of liability to the City and County for the amounts received for the undelivered pads.

Toner's testimony was in essential aspects similar to that of his codefendant. He denied any knowledge of "Q. T." orders or of "keeping the storekeeper in the dark." He also specifically denied any fraudulent participation in or gain from any of the transactions covered by the audit but did admit that he had authorized payment to Reagents in advance of delivery on the bed pad orders. He said the advance payments were made to accommodate Chang as a small businessman. He testified: "I knew there were some back orders because I had made, no, I had made advance payments to Mr. Chang, it's a matter of official record." Asked for explanation of that statement, he testified: "Well, as I say, he was a small business man. To help him out and to make sure I had a source of supply, and he was also the low bidder, I did make the advance payment and I do believe, I have to check the records, there are some more pads due." These answers reflect the core of his defense.

By the first specification of error it is claimed that the trial court committed error in refusing to strike a statement that Defendant Chang had been asked by a police officer if he would be willing to submit to a polygraph test. The statement was made in an answer given during direct examination of a detective called by the prosecution.

The witness, Dorr Barrett, had testified that on the afternoon of August 7, 1959, Chang, accompanied by his attorney (Bert Kobayashi, Esq.), appeared before him and Lieutenant Nakagawa at Police Headquarters and

that he believed the lieutenant was the first to speak. Thereupon the examination of Barrett proceeded, as follows: ·

"Q. Now, what did Lieutenant Nakagawa say, if you can recall?

"A. Well, the entire interview and conversation didn't take very long because the point was asked of Mr. Chang if he cared to make any type of a statement, and I believe it was Mr. Kobayashi that said that on his advice, he had advised Mr. Chang not to make any statement.

"Q. Was anything further stated at that time by anyone of you four?

"A. Yes. I'm trying to recall whether it was myself or Lieutenant Nakagawa. *In any event, one of us asked him—*

"Q. *Asked who?*

"A. *Mr. Chang, during the same short interview if. he would be willing to submit to a polygraph test or a lie detector test.*

"MR. KOBAYASHI: *If the Court please, object to this testimony as highly improper, highly prejudicial.* The law does not require—

"MR. TITCOMB: Just a minute.

"MR. KOBAYASHI: Any defendant to take such a—

"THE COURT: The law doesn't require him to make a statement either.

"MR. KOBAYASHI: I appreciate that. But the law does not require, and defendant has a right not to take an examination by a lie detector test and it's prejudicial to have even such a thing even mentioned or entered in the court record.

"MR. TITCOMB: I will—

"MR. KOBAYASHI: *I object and may that be stricken from the record.*

"MR. TITCOMB: I will concede that everything we introduced into this case is prejudicial to the defendant, to both defendants. I will concede to that.

"MR. KOBAYASHI: If that is so, it is improper. It isn't right.

"MR. TITCOMB: Am I—

"MR. KOBAYASHI: One moment please. We're seeking a ruling of the court.

"MR. TITCOMB: Am I to understand there is an objection on the ground that the matter attempted to be elicited from this witness is prejudicial to your clients?

"MR. KOBAYASHI: The form of the question, the answers, the former question on this topic matter is highly improper and prejudicial. Upon that ground, my objection stands.

"THE COURT: But there was no objection by you to the statement by the witness whether Mr. Chang cared to make a statement.

"MR. KOBAYASHI: Sir?

"THE COURT: Repeat that.

"(The court's remark was read back by the Reporter)

"MR. KOBAYASHI: I had no objection to that. That's the privilege accorded the defendant so we exercised it.

"THE COURT: And you also have a privilege of refusing to take the polygraph test.

"MR. KOBAYASHI: That is right. So we refused it but that isn't part of the record.

"THE COURT: *I'll overrule it, overrule the objection. Let the witness answer.*

"MR. KOBAYASHI: *Take exception, if the Court please.*"

Appellee argues that no error was committed by the court in respect to Barrett's answer and further that reversal cannot in any event be based upon the answer since, it is contended, there was neither a motion made to strike it nor an exception taken to the court's ruling.[1] It is asserted in appellee's brief on the procedural point: "* * * the transcript clearly reflects that *neither* counsel presented any motion to strike the answer of the witness (which Appellee contends was harmless for the reasons already given) or to have the court instruct the jury to disregard it. Nor was there any *exception* taken by counsel to the court's omission to do the acts now assigned as error. Now, for the first time, on appeal, counsel accuses the trial judge of committing prejudicial error in *refusing* to act pursuant to a heretofore nonexistent motion, made known for the first time on page 21 of Appellants' Opening Brief."

It is obvious from the transcript that defense counsel was having difficulty endeavoring to present an objection and to be heard while being required simultaneously to cope with the court and with the prosecuting attorney, but it is clear from the portion of the transcript italicized that notwithstanding such interference, he did object to Barrett's answer, that he did make a definite application to have it stricken, that the court's ruling following the application was tantamount to a denial of the application and that an exception was saved to the ruling. The competency of Barrett's answer and the action of the court in allowing it to stand are therefore properly and squarely before us.

---

[1]This case was tried before the Hawaii Rules of Criminal Procedure went into effect and consequently the former practice requiring an exception to be taken in order to save adverse rulings on the admission of evidence for review is applicable on this appeal.

Evidence of a lie detector test has no place in the trial of a case. Courts do not consider the polygraph or lie detector sufficiently perfected nor the interpretation of results in its use reliable enough to permit testimony respecting such a test to be admitted in evidence. No rule of evidence could be more firmly established than that excluding such testimony.

There apparently is only one reported case, *People* v. *Kenny,* 167 Misc. 51, 3 N.Y.S.2d 348, which has held testimony on the results of a lie detector test to be admissible. The decision in that case was rendered by a New York county court and the holding is substantially affected, if not nullified, by the subsequent refusal of the New York Court of Appeals in *People* v. *Forte,* 279 N.Y. 204, 18 N.E.2d 31, to judicially acknowledge the efficacy of the lie detector test. No mention was made in the *Forte* case of the *Kenny* decision but in *People* v. *Dobler,* 29 Misc.2d 481, 215 N.Y.S.2d 313, decided in 1961, the court, also a county court, citing *People* v. *Forte, supra,* says at p. 314: "It has long been held in this State that the results of a lie detector test may not be introduced into evidence. This rule of evidence will continue until such time as there is general scientific recognition that the instrument or instruments used is or are effective for the purpose of determining the truth and that the evidence relating to it possesses such value that reasonable certainty can follow from such tests." See also *United States ex rel. Sadowy* v. *Fay,* 2 Cir., 284 F.2d 426.

All other jurisdictions which have ruled on the point unequivocally hold that results of a polygraph test are inadmissible. In a general annotation on deception tests appearing in 23 A.L.R.2d it is stated at p. 1308 in respect to lie detector tests, with citation of supporting cases[2]:

[2]More recent decisions are noted in 1962 A.L.R.2d Supp. Serv. 580.

"It would appear, at least in the absence of stipulation, that the courts almost uniformly reject the results of lie detector tests when offered in evidence for the purpose of establishing the guilt or innocence of one accused of a crime, whether the accused or the prosecution seeks its introduction. The reason most commonly assigned for the exclusion of such evidence is the contention that the lie detector has not as yet attained scientific acceptance as a reliable and accurate means of ascertaining truth or deception."

From our review of the authorities we can account for the inclusion in the quoted text of the qualifying words "almost uniformly" only by reason of the county court's ruling in *People* v. *Kenny, supra.* There certainly is no lack of uniformity in appellate court decisions, as is brought out in *State* v. *Valdez,* 91 Ariz. 274,* 371 P.2d 894, the most recent case on the subject of the polygraph test that we are aware of. While the issue in that case pertained to the admissibility of the results of a lie detector test pursuant to stipulation,[3] the Arizona Supreme Court considers the law and authorities on the admissibility of the results of polygraph tests generally, and in an elucidating opinion concludes that the New Jersey court was correct in pointing out, in *State* v. *Arnwine,* 67 N.J. Super. 483, 171 A.2d 124, 131:

"* * * that there is not a single reported decision where an appellate court has permitted the introduction of the results of a polygraph or lie-detector test as

---

*No. 1254, decided May 23, 1962.

[3]The Arizona court recognized that the authorities are divided on the question of whether the results of a stipulated test are admissible. It held that polygraphs and expert testimony in relation thereto are admissible upon stipulation subject, however, to certain specified qualifications, one of which is that notwithstanding the stipulation, admissibility still must rest in the discretion of the trial judge. See, *contra, Stone* v. *Earp,* 331 Mich. 606, 50 N.W.2d 172; *State* v. *Trimble,* 68 N.M. 406, 362 P.2d 788.

evidence in the absence of a sanctioning agreement or stipulation between the parties."

It follows from the incompetency of the test itself as evidence that the refusal or willingness of a defendant to submit to a lie detector test are matters that may not be brought out in the trial of a criminal case.

In *State* v. *Britt,* 235 S.C. 395, 111 S.E.2d 669, the admission of testimony that the defendant had been offered an opportunity to take a lie detector test but had refused was held to be reversible error notwithstanding the trial court's instruction admonishing the jury to disregard the testimony. A comparable holding is found in *State* v. *Kolander,* 236 Minn. 209, 52 N.W.2d 458, in which at p. 465 it is said: "The state concedes that the results of a lie-detector test would not be admissible, but contends that it may nevertheless be shown that defendant refused to take such test, since such refusal is evidence of a consciousness of guilt similar to evidence of flight. With this we cannot agree."

In *Commonwealth* v. *Saunders,* 386 Pa. 149, 125 A.2d 442, it is stated at p. 445: "Since it is uniformly held that such a test [polygraph] is not judicially acceptable, see Commonwealth ex rel. Riccio v. Dilworth, 179 Pa.Super. 64, 67, 115 A.2d 865, 866, it is obvious that neither a professed willingness nor a refusal to submit to such a test should be admitted." See also *Marks* v. *United States,* 10 Cir., 260 F.2d 377, 382; *Aetna Insurance Company* v. *Barnett Brothers, Inc.,* 8 Cir., 289 F.2d 30, 34.

We fully agree with the summary in *McCain* v. *Sheridan,* 160 Cal. App. 2d 174, 324 P.2d 923, wherein at pp. 925–926 the court holds: "Beyond question, the results of lie detector tests are inadmissible in evidence on the trial of a criminal case, whether offered by the prosecution (People v. Aragon, 154 Cal.App.2d 646, 316 P.2d 370; People v. Wochnick, 98 Cal.App.2d 124, 219 P.2d 70),

or the defense (People v. Porter, 99 Cal.App.2d 506, 510, 222 P.2d 151). Nor are such results admissible on trial of a civil case (Gideon v. Gideon, 153 Cal.App.2d 541, 546, 314 P.2d 1011). *Similarly, a suspect's willingness or unwillingness to take such a test is inadmissible at trial* (People v. Carter, 48 Cal.2d 737, 752, 312 P.2d 665)." (Emphasis added.)

In application of the above authorities and consistently with the reasoning underlying them, it is our opinion that Detective Barrett put into evidence inadmissible testimony when he stated Defendant Chang had been asked if he would be willing to take a lie detector test and that therefore the trial court committed error in overruling the objection to the testimony and in failing to strike it from the record as requested.

Appellee argues that, even if it be conceded that admission of Barrett's testimony was error, nevertheless it was not only nonprejudicial but any error in respect thereto was cured by what transpired after the court overruled defense counsel's original objection. It is contended that the question asked of Barrett was harmless in itself and that "The prosecution could not have anticipated that such an aswer was going to be elicited from the witness."

We find it difficult to accept the contention that the objectionable answer given by Barrett was unanticipated. The very fact that the prosecution opposed the objection in itself tends to refute the contention. Further, the persistency with which the prosecution subsequently maintained its position strongly militates against the claim now being made that it had no expectation of the answer given by Barrett. However that may be, whether the answer was volunteered or not bears only on the gravity of the error and in that respect is on this record relatively of not much significance.

We are also unable to agree with appellee's contention

that Barrett's answer "merely stated a meaningless and innocuous fact and could not have disparaged Appellant Chang before the jury." Aside from the ready disposition of the point dictated as a matter of law by the authorities above considered, analysis of the circumstances permits only the conclusion that the jury could easily have weighed the answer against the defense. Certainly the jury would hardly have assumed from the prosecution's efforts to get and keep in evidence the fact Defendant Chang had been given an opportunity to take a lie detector test that he had agreed to take the test and had successfully passed it. This left then for possible speculation by the jury only the adverse alternates that he either had refused to take the test or had taken it and failed.

Appellee's final point is that the record shows that the court eventually reversed its ruling on the admissibility of Barrett's answer and any error in respect thereto was thereby cured.

After the court had overruled Defendant Chang's objection and exception had been noted as above set out, counsel for Defendant Toner also attempted to make an objection in relation to polygraph testing but he was interrupted and cut off at the outset of his attempt by the prosecutor's addressing the court. A colloquy between the prosecutor and counsel for Chang ensued and then the transcript shows the following:

"THE COURT: There's a pending objection, I've already ruled on it.

"MR. TITCOMB: May I proceed?

"MR. KOBAYASHI: If the Court please, may I make another objection. Whatever result that may be obtained from such a test is not admissible. That is the general rule. If that is so, again I interpose an objection that any question relating—

"THE COURT: We're not discussing any result.

We're discussing what was asked and what were the answers.

"MR. KOBAYASHI: I appreciate that but because of the general rule that the result is not admissible, even if the man did not, defendant did not take the examination, a question as to whether he was asked to take it or [sic] not proper, if the Court please. Otherwise by indirection you will admit what you cannot admit by direction.

"MR. TITCOMB: May I proceed?

"MR. KOBAYASHI: I'm still seeking the ruling of the Court.

"MR. TITCOMB: There has been a ruling.

"THE COURT: I think that I'll caution that we should keep the polygraph incident out of this."

The day's session ended shortly after the foregoing. Counsel met with the court in chambers relative to a question raised in the interim on whether the prosecution could put into evidence testimony that Defendant Chang had failed to deny the charge against him when he was booked at the Police Station. This was offered on the theory that such failure constituted an admission. During discussion of that issue in chambers the court directed the prosecution to "Look up the question of whether it is a valid thing to ask the accused whether he will take a polygraph test, and whether his answer to that query is admissible, admitting that the result of a test is not." The conference concluded with the court stating: "I don't think that the foundation exists for this sort of admission when the record already shows that the defendant has refused to make a voluntary statement so I'll sustain the objection as to this line of inquiry for the purpose of trying to get this in as an admission against him. Tomorrow at 9 o'clock, but I would be interested in that polygraph deal and find out whether it's ever been held as reversible error." This was on a Thursday.

Upon the opening of the next day's session the following took place, in the presence of the jury:

"THE COURT: I take it there is no pending objection?

"MR. KOBAYASHI: Sir?

"THE COURT: Was there a pending objection?

"MR. KOBAYASHI: There was an objection which the court indicated it was overruling.

"MR. TITCOMB: If the Court please, there was an objection and the court sustained it.

"THE COURT: I had sustained it as to the so-called admission.

"MR. KOBAYASHI: That is right.

"THE COURT: I also sustained the objection as to the mention of the polygraph.

"MR. KOBAYASHI: Yes."

We cannot agree with appellee that the foregoing excerpts from the transcript show "the trial judge suddenly reversed his former ruling and ordered the prosecution to 'keep the polygraph incident out of this,'" and that the error in the ruling was cured. The court's admonition to the prosecution to keep the polygraph "out of this" was not directed at and had no effect on the objectionable answer already in. Its effect, at most, was to preclude the prosecution from pursuing the inquiry relative to a polygraph test any further.

It is evident from the transcript on what occurred in chambers after the day's trial on Thursday that the court, upon reflection, was entertaining some doubt as to whether it was permissible to bring out on a trial that an accused had been asked to submit to a polygraph test. The court requested or directed the prosecutor to do research on the point, but gave no indication it would reverse its ruling allowing such evidence in. Further, even if the announce-

ment by the court the next day before the jury that it had "also sustained the objection as to the mention of the polygraph" could be taken as indicating that the court intended to reverse the original ruling respecting Barrett's answer, the error was not thereby cured. Under the particular and confusing circumstances revealed by the transcript, it is our opinion that the only method by which the court could have eradicated or minimized the harmful results of its original ruling, if it actually intended to reverse that ruling, was by a definite statement that it was reversing the ruling accompanied by a clear admonition to the jury to disregard the objectionable statement made by Barrett. See *Territory* v. *Goto,* 27 Haw. 65, 94–97. Because of the trial court's failure in that respect we must reject appellee's contention that the original error in overruling the objection to Barrett's answer and in failing to strike it was cured.

In *Mills* v. *People,* 139 Colo. 397, 339 P.2d 998, a murder conviction was set aside because of the introduction of evidence that the accused had refused to submit to a lie detector test. Comment by the court in that case may not be entirely out of place here. The Colorado court said (at p. 999):

"* * * It is the duty of prosecuting officers to guard against the introduction of incompetent evidence. Overprosecution of an accused should not be permitted by the trial court. In the instant case the district attorney insisted at great length upon introduction into evidence of testimony which is uniformly held to be incompetent, in an unbroken line of authorities throughout the nation. The trial court erred in departing from the well-established rule. We are afforded no alternative and must reverse the judgment."

Appellants' specification of error No. 26 presents the exception taken by defendants to the refusal of the court

to give Defendant Toner's requested instruction No. 15 reading:

"You are instructed that you must receive and consider the testimony of all alleged accomplices with great caution and their testimony should be submitted to the strictest scrutiny."

In refusing the request the trial court explained: "This [Instruction No. 15] is as to accomplices and not as to conspirators." The exception must be sustained.

The only citation in point offered by appellee in contending that it was not error to refuse instruction No. 15 is *People* v. *McCrea,* 303 Mich. 213, 6 N.W.2d 489. In that case it was held that there is no need for and it is not error to refuse an instruction cautioning the jury on the testimony of an accessory when a comprehensive general instruction on the credibility of witnesses, such as was given in this case, is given. Appellee also urges that the holdings in *Territory* v. *Bodine,* 32 Haw. 528, and *Territory* v. *Sing Kee,* 14 Haw. 586, are analogous and that they call for application of *People* v. *McCrea* to this case.

The *Bodine* case held that with adequate general instructions on the burden of proof, presumption of innocence, and credibility of witnesses given on the trial of a defendant charged with assault with intent to commit rape, it was not error to refuse an instruction admonishing the jury to be cautious in view of the nature of the crime charged.[4] For similar reasons it was held in the *Sing Kee* case not to be error to refuse an instruction singling out and cautioning the jury on the testimony of an informant, the court stating at pp. 589–590: "The testimony of informers is to be judged, as to its truthfulness, by the same tests as that of other witnesses."

It is our view that *People* v. *McCrea* is too restrictive and that it is not in line with the authorities generally.

---

[4]For a somewhat critical analysis of the *Bodine* holding, see *Territory* v. *Hays,* 43 Haw. 58, 62.

Also we see no need in this case to analogize. Particular rules directly govern consideration of the testimony of an accomplice. These have developed with time and experience from an interesting origin in the early common law recognition of "approvement," a practice by which accomplices were encouraged to testify for the Crown. See *Lee* v. *State,* 115 Fla. 30, 155 So. 123, 127; 14 Am. Jur., *Criminal Law,* § 114, p. 843.

The standard tests for judging the truthfulness of witnesses generally may too often be inadequate for proper appraisement of an accomplice's testimony. The great likelihood of a self-serving purpose or motive being present whenever an accomplice testifies requires that every accomplice's testimony be approached with suspicion. It is important therefore that jurors, who may not be aware of the reason for the special caution, be alerted for proper consideration of the testimony of an accomplice.

In *O'Brien* v. *People,* 42 Colo. 40, 94 Pac. 284, the court states, at p. 285:

"The probability is so great that a witness who admits his own guilt implicates others under a promise, or at least a hope, of immunity that the jury should be cautioned concerning his testimony. This court has repeatedly held that such an instruction should be given."

In 20 Am. Jur., *Evidence,* § 1235, at p. 1087, it is said:

"The facts that the testimony of accomplices is not of the most satisfactory character and that it is attended with serious infirmities are matters recognized by the decisions and are too obvious and well understood to call for exposition. Such considerations go to the credibility of the evidence, and the law requires that such testimony be closely scrutinized and accepted with caution. * * *"

It is generally recognized that the jury should be in-

structed to scrutinize and act upon an accomplice's testimony with special care and caution. "An accomplice's testimony may be attacked before the jury as incredible and prompted by unworthy motives. The jury is usually warned by the court against hasty credence of the testimony of an accomplice, and instructed that great caution must be employed in the reception and consideration of accomplice evidence, and that it should be submitted to the strictest scrutiny. * * *." 1 Underhill's *Criminal Evidence*, 5th ed., § 181, pp. 376, 377. There is, however, a wide divergence in the decisions respecting the basis upon which the defendant is entitled to an instruction cautioning the jury on the reception and consideration of an accomplice's testimony.

In some jurisdictions the defendant has the right as a matter of law to a cautionary instruction on an accomplice's testimony. This view is exemplified by *Varnum* v. *State*, 137 Fla. 438, 188 So. 346, in which it is said at p. 351:

"It is contended that the charge assigned as error omitted the word 'great' and the requested charge, not given by the trial court, contained the word 'great.' It is the law of Florida that an accused may be convicted upon the uncorroborated testimony of an accomplice and the trial court so charged. The cited authorities sustain the contention that a defendant, as a matter of law, is entitled to have the court charge the jury that the evidence of an accomplice should be received by the jury with great caution."

See also *Jungclaus* v. *State*, 170 Neb. 704, 104 N.W.2d 327, 331.

In other jurisdictions the rule that the court should advise the jury to be cautious about an accomplice's testimony is considered one of practice only and vests discretion in the trial court. See *e.g.*, *State* v. *Coolidge*, 106 Vt.

183, 171 Atl. 244, 247; *State* v. *Douglas*, 70 S.D. 203, 16 N.W.2d 489, 499. However, even where the defendant's right to a cautionary instruction is controlled by rule of practice rather than of law, denial of such an instruction by the trial court may not be capricious. This fundamental concept as applied to the issue at hand is well brought out in the concurring opinion of Ethridge, J., in *Gordon* v. *State*, 188 Miss. 708, 196 So. 507, at p. 510, as follows:

"* * * All discretion that any judge has is legal discretion—not personal or arbitrary discretion, but that regulated by law. It would, of course, depend upon the facts of the particular case whether the court should give such cautionary instructions; but where the facts are such as to make the principle applicable, the defendant has the right to have the jury informed by the court that such evidence should be scrutinized with care and caution and acted upon guardedly.

"It is well known that many witnesses, and confederates in crime, seek to curry favor, or to escape punishment or to mitigate punishment on their part by testifying against their co-defendants. Many states hold that the testimony of an accomplice alone will not support a conviction; but our State holds that it may, and to guard against the danger of fabrications and self-seeking the law itself looks upon such testimony with suspicion and applies caution; and as jurors are not presumed to be familiar with the details of law and evidence, they should be told in a particular case how the law looks upon such testimony. * * *"

Proper application of the principle discussed by Judge Ethridge means, at least, that it would be an abuse of discretion to refuse a request for a cautionary instruction in any case where the testimony of an accomplice substantially aids the prosecution's proof.

It was held in this jurisdiction long ago that a cautionary instruction should be given where the prosecution's case includes testimony of an accomplice. In *Republic* v. *Edwards,* 11 Haw. 571, decided in 1898, the court summarizes the law applicable to the testimony of an accomplice, at p. 575, as follows:

> "We sum up our views as follows: (1) *The jury should be cautioned as to giving credit to the testimony of an accomplice.* (2) The jury may be instructed that they may convict on the uncorroborated testimony of an accomplice. (3) It is, if the case warrants it, discretionary with the court to advise the jury not to convict on such testimony. We presume the court has the power to so advise in every proper case." (Emphasis added.)

While the specific issue before the court in the *Edwards* case was whether a conviction could rest on the uncorroborated testimony of an accomplice, we think that as a statement of a general rule the court's pronouncement relative to the necessity of cautioning the jury on the reception of an accomplice's testimony is sound and in line with the great weight of authority. See also *State* v. *Carvelo,* 45 Haw. 16, 42, 361 P.2d 45, 59.

On the basis of the *Edwards* case and the other authorities considered, we conclude that, beyond question, a cautionary instruction is in order whenever an accomplice called by the prosecution gives testimony of significant weight and importance in proof of the charge, and that it is error to refuse a request for such an instruction when an accomplice so testifies.

While neither the assistant administrator nor the budgetary accountant were charged or named in the indictment as coconspirators, it is apparent that they wilfully and knowingly participated in the irregular processing of orders for bed pads and that their cooperation in

that connection was instrumental and necessary for accomplishment of the fraudulent scheme alleged in the indictment. They in effect claimed that they cooperated in the scheme out of fear of dismissal. However, whatever their purpose or motive for participating, in the eyes of the law they must be considered coconspirators. 11 Am. Jur., *Conspiracy*, § 7, p. 547. And by reason of such complicity, as witnesses, they were accomplices. 14 Am. Jur., *Criminal Law*, § 108, p. 839.

The evidence undoubtedly was sufficient to sustain the conviction independently of the testimony of Ono and Yoshida. However, the testimony of the two witnesses played a substantial part in the prosecution's case. It materially bolstered the prosecution's proof in many respects, but particularly in connection with the important element of *scienter*. It is our conclusion therefore that this is a case in which there could have been no justifiable reason for failing to accede to a request for a cautionary instruction. It was therefore error for the trial court, whatever its reasoning may have been, to have refused to give Defendant Toner's requested instruction No. 15 either in the form as requested or in such modified form as may have been deemed more suitable to the court.

The court's remarks accompanying its denial of the requested instruction seem to indicate that it was under the impression that while a cautionary instruction was in order for accomplices, such an instruction was not applicable to coconspirators when called as witnesses. Every accomplice is not a conspirator, but for purposes of applying the pertinent rules of evidence any coconspirator called as a witness must be considered an accomplice. See *People* v. *Black*, 45 Cal. App. 2d 87, 113 P.2d 746, 755; *People* v. *Kelly*, 380 Ill. 589, 44 N.E.2d 563, 565. For that reason the rejection of instruction No. 15 cannot be sustained on the grounds announced by the

court in refusing the request for it. This is clearly brought out in *Weiss* v. *State,* Dist. Ct. App. Fla., 124 So.2d 528, at p. 529, as follows:

> "The trial judge refused a request to charge the jury that such testimony should be received with caution, stating he was of the opinion that such a charge, required when an accomplice testifies, was not applicable to conspirators. The law appears otherwise. One alleged conspirator may testify against another, but when that occurs the rule governing the testimony of an accomplice applies to require a cautionary charge. Therefore, the requested charge, that testimony of the alleged coconspirators is to be received with great caution, should have been given, and its refusal was prejudicial."

See also *Slater* v. *State,* 224 Ind. 627, 70 N.E.2d 425, 429-430; *Colt* v. *United States,* 5 Cir., 160 F.2d 650, 651; *People* v. *Griffin,* 98 Cal. App. 2d 1, 219 P.2d 519; 11 Am. Jur., *Conspiracy,* § 43, p. 576.

Specifications of error No. 24 and No. 25 present exceptions taken to the refusal of the court to give Defendant Chang's requested instructions No. 18 and No. 19.

Requested instruction No. 18 reads:

> "The fact that defendant HAROLD H. CHANG is indebted to the City and County of Honolulu for payment in advance does not in and of itself constitute the crime of gross cheat. In this connection you are instructed that the amount of money involved is not a material factor in determining whether a debtor-creditor relationship existed.
>
> "If you find only that defendant HAROLD H. CHANG is indebted to the City and County of Honolulu for the delivery of incontinent pads paid for but not yet fully delivered, you must bring back a verdict of not guilty as to both defendants."

Requested instruction No. 19 reads:

"The receipt of payment in advance does not constitute the crime of gross cheat if you find that the defendant HAROLD H. CHANG intended to make delivery in full at some subsequent time. Also the mere shortages in delivery of incontinent pads ordered by the City and County of Honolulu does not constitute the crime of gross cheat. You are further instructed that you must bring back a verdict of not guilty if you find that the failure of defendant HAROLD H. CHANG to make delivery in full was due to any reason other than a wilful intent not to so deliver.

"Even if you find that defendant HAROLD H. CHANG wilfully intended not to make delivery of the merchandise in full, you must still bring back a verdict of not guilty as to both defendants, unless you find also that this wilful intent not to deliver was based upon some prior agreement and scheme between the two defendants to defraud the City and County of Honolulu."

Appellants cite general authorities for the indisputable proposition that it is the duty of the court to instruct on any defense or theory of defense having support in the evidence. 53 Am. Jur., *Trial*, § 627, p. 488. Otherwise we are offered little more in appellants' briefs than the summary of their argument that it was error to refuse requested instructions Nos. 18 and 19, because they "were applicable to the contention of the Defendants, Plaintiffs-in-Error, of mere civil liability and which contention was supported by evidence."

The testimony of the defendants furnishes a basis for the contention that the liability for the nondelivery of bed pads was civil and not criminal. Counsel for Chang was permitted to argue that before the jury. A jury of normal intelligence could hardly have been misled by the

court's failure to specifically advise it of the distinction between criminal and civil liability. However, in view of the nature of the offense charged and the defendants' testimony, we think the defendants would have been entitled to instructions covering that and other features of their defense if they had presented properly drawn instructions on the points. As is stated in *Territory* v. *Alcantara*, 24 Haw. 197, at p. 208:

"The defendant in a criminal prosecution has the right to have the court instruct the jury in the law applicable to his contention, if supported by substantial evidence, however weak, unsatisfactory or inconclusive it may appear to the court."

In addition to covering the distinction between civil and criminal liability the defendants undoubtedly were entitled to have the jury instructed that the mere non-delivery of pads would not be determinative of guilt in this case. Also, in view of the fact that no substantive offense was charged and that the issue for determination was on a single count conspiracy charge naming only the two defendants, the defendants would have been entitled to have the jury instructed somewhat after the fashion of the second paragraph of Defendant Chang's requested instruction No. 19, except that this feature of the defense was adequately covered by other instructions given by the court. However, the two instructions are unartfully drawn. They are disjointed, ambiguous and misleading. They do not lend themselves to ready modification. We consequently find no error in the court's refusal to give the requested instructions. *Territory* v. *Palai*, 23 Haw. 133, 140; *Uuku* v. *Kaio*, 21 Haw. 710, 718; *State* v. *Yoshida*, 45 Haw. 50, 65, 361 P.2d 1032, 1040.

Appellants urge that error was committed in the giving of three of the prosecution's requested instructions. While the instructions are set out in the specifications of

error relating to them (specifications Nos. 21, 22 and 23), none of these specifications alleges any grounds of objection to the instruction covered by it. In fact, neither the assignments of error nor the specifications state that any objections were taken to the instructions. They allege merely that exceptions were noted. The portions of the transcript referred to in the specifications merely show that the instructions were given, over objection, without revealing what the objections were. This is not sufficient. Under Rule 3(b)(4) of this court, the objections urged at the trial must be set out in the specification and the failure to do so precludes review of the contended error on appeal. *You Goo Ho* v. *Ing,* 43 Haw. 330, 332; *Territory* v. *Pierce,* 43 Haw. 246, 248. Proper practice in the settlement of instructions should as a matter of course provide counsel an opportunity for noting of record the particular objections intended to be made. *State* v. *Hale,* 45 Haw. 269, 278-279, 367 P.2d 81, 87. However, where the court, through oversight or otherwise, fails to adhere to this practice, it is up to counsel to speak out and see to it that the record is perfected. *In re Goodfader,* 45 Haw. 317, 343, 367 P.2d 472, 487. Because of the deficiencies noted we do not consider these three specifications.

Ten specifications of error (Nos. 2 to 11) cover remarks made by the court during the course of the trial, which appellants contend were prejudicial to their case. By another six specifications (Nos. 12 to 17) appellants claim they were similarly prejudiced by misconduct of the prosecuting attorney. The record affords considerable basis for appellants' complaint. Many of the remarks and incidents complained of were beyond the pale, and improperly reflected against the defense. The court's contentiousness and the prosecutor's interjection of facetious remarks revealed in our consideration of the transcript in connection with specification No. 1 are examples of what

appellants complain of. A number of the remarks and incidents covered by these specifications were not objected to or were cured by admonition to the jury. However, in view of the disposition of this appeal, we do not think there is any necessity for determining the sufficiency of each of the sixteen specifications of error or for particularized consideration of the individual incidents covered by any of them.

We do not pass on the remaining specifications of error (Nos. 18, 19 and 20). They raise minor points and the trial court's rulings covered by these specifications are either not properly reserved or the contentions in respect thereto are inadequately briefed for consideration.

As we stated at the outset, there is no question but that the evidence adduced in the rather extended trial of this case amply supports the verdict returned. Were we considering only the error on the admission of the testimony concerning the polygraph test, or only the error on the denial of the request for a cautionary instruction on the testimony of accomplices, we believe we would be hard pressed to determine whether or not a reversal was called for. However, when these two errors are considered together and against the background of the atmosphere created by the incidents covered in specifications Nos. 2 to 17, there can be no alternative to the conclusion that the appellants are entitled to and must be granted a new trial.

Reversed and remanded.

*Bert T. Kobayashi* and *Noboru Nakagawa* for Harold H. Chang, defendant-plaintiff in error.

*Robert E. St. Sure,* for Edward P. Toner, defendant-plaintiff in error.

*John H. Peters,* Prosecuting Attorney, City and County of Honolulu, and *Harold H. K. C. Hu,* Deputy Prosecuting Attorney, for the State, plaintiff-defendant in error.