**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Joel A. BLUMBERG, Defendant.**

**Crim. No. 1763.**

United States District Court
D. Delaware.

Sept. 20, 1966.

Alfred J. Lindh, First Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Dennis A. Reardon of Becker & Kipp, Wilmington, Del., for defendant.

---

## OPINION

LAYTON, District Judge.

Defendant Joel A. Blumberg was tried and convicted on June 14, 1966, in a trial by jury, under an indictment charging him with knowingly and wilfully falsifying, concealing, and covering up material facts by encashing for an unknown person a $2,891.00 "twin double" pari-mutuel ticket, with the intention of enabling the unknown person to avoid the necessity of disclosing his identity as recipient of the income of the ticket to the Brandywine Raceway, thereby preventing the Brandywine Raceway from reporting the identity of the unknown person to the Internal Revenue Service as required in 26 U.S.C. § 6041, in violation of 18 U.S.C. § 1001.

Defendant has moved for a verdict of acquittal or in the alternative for new trial. Defendant's principal grounds involve the theory that 26 U.S.C. § 6041 in connection with other circumstances is so vaguely worded that a criminal prosecution under that statute is offensive to defendant's right to due process of law. M. Kraus Bros., Inc. v. United States, 327 U.S. 614, 66 S.Ct. 705, 90 L.Ed. 894 (1946).

The facts of the case are as follows:

On August 16, 1965, at Brandywine Raceway, Wilmington, Delaware, the defendant was under the observation of two special agents of the Internal Revenue Service. An unknown man had attempted to cash a pari-mutuel ticket, but did not produce proper identification, and was unsuccessful. Defendant was observed to hold a short conversation with the unknown person, and the unknown person passed something to defendant. Defendant then proceeded to the cashier's window, produced proper identification (his own), and cashed a pari-mutuel ticket for $2,891.00. Defendant and the unknown man then walked away together, and as they walked away, they exchanged what appeared to be a $100.00 bill. Defendant was arrested at his home in Camden, New Jersey, on September 9, 1965.

At the close of the Government's case, defendant moved for a verdict of acquittal, on the ground that the Government had not established a prima facie case under the indictment. That motion was taken under advisement, and was renewed after the jury returned a guilty verdict, except that the post-trial motion also covered a number of other grounds, including the Court's instructions to the jury, and the admission of certain documents into evidence.

Title 18 U.S.C. § 1001, under which defendant was tried, provides as follows:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact * * * [shall be guilty of an offense against the laws of the United States.]"

The contention of the Government is that defendant Blumberg wilfully concealed the name of the actual recipient of of the income from the twin-double ticket through the trick or scheme of placing his own name on the identification form provided by the Brandywine Raceway pursuant to the requirements of 26 U.S.C. § 6041.

The identification form used by Brandywine Raceway and approved by the Internal Revenue Service is entitled "INTERNAL REVENUE D.D. IDENTIFICATION", and provides spaces for identification information, including name, address, Social Security Number, driver's license number, etc. Across the

bottom of the form, the following legend appears, in small black type:

"The U. S. Government now *requires* that we report the name and address of all winners of $600. or more on a $2.00 Daily Double and all winners of $3000. or more on a $10.00 Daily Double ticket.

"Payment cannot be made on a winning double ticket without proper identification, Social Security, License, etc." (Emphasis supplied.)

In the regular course of business, Brandywine Raceway transfers the information given on the identification form to a 1099 form, and forwards copies to the taxpayer and to the Internal Revenue Service.

 Evidence that the defendant had cashed nearly a quarter of a million dollars in twin and daily double tickets at a number of racetracks was introduced for the purpose of demonstrating defendant's familiarity with the identification form itself, and with the ensuing procedures.[1]

The I.R.S.D.D. Identification forms, together with the procedures followed by the racetracks, were the result of agreements between the racetracks and the Internal Revenue Service, pursuant to 26 U.S.C. § 6041, the pertinent sections of which are as follows:

"*Subsection (a)*. All persons engaged in * * * business and making *payment* in the course of such * * * business to another person of * * * fixed * * * gains, profits, or in-

come * * *, of $600. or more in any taxable year, shall render a true and accurate return to the Secretary or his delegate * * * setting forth the amount of such gains, profits, and income, and the name and address of the recipient of such *payment*." (Emphasis supplied.)

"*Subsection (d)*. * * *. [w]hen necessary to make effective the provisions of this section, the name and address of the *recipient of income* shall be furnished on demand of the person paying the income." (Emphasis supplied.)

 A close reading of the two subsections discloses that while Subsection (a) speaks of "payments", Subsection (d) refers to recipient of *income*. Any payee, whether or not the real owner of the "income", would qualify under Subsection (a). Since Blumberg was actually the payee, the "recipient of the payment" under Subsection (a), his name was properly submitted to the Internal Revenue Service within the meaning of that subsection. However, Subsection (d) refers to "recipient of *income*", and clearly authorizes the Brandywine Raceway (but not the IRS) to demand the name of the unknown person who was actually the recipient of the "income" from the winning ticket. Thus, Brandywine Raceway is under a statutory duty only to supply the Internal Revenue Service with the names of the recipients of *payments* of $600. or more, although Subsection (d) also authorizes the Raceway

1. Defendant objected to the introduction of Internal Revenue Identification forms filled out at other racetracks, on the ground that they were irrelevant and prejudicial, since they were not offered to show either that defendant had previously "discounted" winning tickets, or that defendant had actually won the money in question. However, the exhibits in question were offered for the single purpose of showing defendant's familiarity with the language on the form, and the procedures involved. The Court gave a careful, limiting instruction at the time the evidence was introduced, and then gave the following jury instruction:

"The evidence of defendant cashing many other daily double tickets at other tracks was not admitted as evidence or proof that the defendant was guilty of the crime here charged, but rather as evidence that he committed the acts here charged wilfully and knowingly."
Under the circumstances of the case, the admission of the evidence in question was not error, and was within the discretion of the Court. Nye & Nissen v. United States, 336 U.S. 613, 618, 69 S.Ct. 766, 93 L.Ed. 919 (1949); United States v. Stirone, 262 F.2d 571, 576–577 (C.A.3, 1958), rev. on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

to demand the name of the recipient of *income*.

This interpretation of the statute is buttressed by the regulations issued by the Secretary, in 26 C.F.R. § 1.6041–5:

"When a person receiving a payment described in section 6041 is not the actual owner of the income received, the name and address of the actual owner shall be furnished upon demand of the person paying the income and in default of compliance with such demand the payee becomes liable for the penalties provided."

On the other hand, the United States argues that the use of the word "winner" in the I.R.S.D.D. Identification form is a term calculated to warn any reasonable person that only the name of the recipient of the income, that is, the person who bought the winning ticket in the prospect of winning the gamble, is sought. Be that as it may, in my judgment the use of the term "winner" in connection with the immediately preceding language "*The U. S. Government now requires that we report the name and address of all * * * *"*, renders the intent of the form fatally ambiguous from the point of view of serving as the basis for a criminal prosecution. This is because the word "requires" can refer only to Sec. 6041(a) whereas the facts here called for the application of Sec. 6041(d). Not only this, but the Raceway by its own actions apparently was misinterpreting its own form because it is clear without doubt that time after time the Raceway, with the strongest suspicion that defendant was cashing tickets as an agent for the recipient of the income, was demanding that he disclose facts on a form which seemingly sought information under a section of the statute not appropriate to the circumstances of his case.[2] This only serves to emphasize the ambiguity of the language of the form.

 This is apparently a question without any precedent in the authorities. However, my interpretation of the language of the statutes and regulations involved convinces me that the I.R.S.D.D. form was so ambiguous as to bring it within the spirit, if not the actual letter, of M. Kraus Bros., Inc. v. United States, supra. I conclude, therefore, that to uphold the conviction here would amount to an invasion of defendant's right to due process of law.

Regrettably, a judgment of acquittal must be entered.

2. See testimony of Malloy, the manager of the Raceway, who, having a very strong suspicion that defendant was cashing winning tickets for others for a fee, nevertheless, warned him that his (Blumberg's) name was being entered on 1099 forms as though the recipient of the income

and, therefore, subject to tax on such winnings.

See also testimony of a cashier at the Raceway that Blumberg had admitted to him that he was cashing winning tickets for others for a fee.