**UNITED STATES of America,**
**Appellee,**

v.

**Stanley HAIMOWITZ and Murray Lichtman, Appellants.**

**Nos. 117, 118, Dockets 32308, 32309.**

United States Court of Appeals
Second Circuit.

Argued Oct. 28, 1968.

Decided Oct. 28, 1968.

Roger J. Hawke, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Frank M. Tuerkheimer and Charles P. Sifton, Asst. U. S. Attys., on the brief), for appellee.

Jonathan L. Rosner, New York City (Rosner & Rosner, New York City, on the brief), for appellant Haimowitz.

Michael P. Direnzo, New York City, for appellant Lichtman.

Before LUMBARD, Chief Judge, and KAUFMAN and HAYS, Circuit Judges.

PER CURIAM:

Although these convictions were affirmed in open court we believe we should make a brief record of our reasons.

On April 7, 1966, a nine count indictment was filed against the defendants Haimowitz and Lichtman. Count one charges them with conspiring together and with others to defraud the United States "in the ascertainment and collection of information used by the Internal Revenue Service in determining the tax liability of said defendants, and of others, and to violate Section 7206(2) of Title 26, United States Code." Counts two through nine allege that defendants on several occasions caused the recipients of race track income to be fraudulently misrepresented on Internal Revenue information returns.

The jury found both defendants guilty on all counts; each was sentenced to a term of imprisonment of one year and one day on each count, the sentences to run concurrently.

Section 7206(2) [1] in substance makes it an offense to aid, assist in, or procure the preparation or presentation of fraudulent or false information in connection with material matters required to be reported under the Internal Revenue laws. The essence of the charges against the defendants is that they conspired to deprive the government of material information concerning their parimutuel twin double winnings at Yonkers and Roosevelt Raceways by paying other individuals to cash their winning tickets, thus preventing their own names and the amounts of their winnings from appearing on Internal Revenue Service information return, Form 1099, which is filed by the race track pursuant to 26 U.S.C. § 6041(a). [2] This latter section requires the race track to file information returns with the Internal Revenue Service as to payments it makes in excess of $600, setting forth in each instance the name and address of the recipient and the amount of the payment made to him.

At the trial, Phillip Beloff and Joseph Pipitone testified for the government that on a number of occasions both Haimowitz and Lichtman gave them winning tickets to be cashed. The proce-

---

1. 26 U.S.C. § 7206 in part provides: "Any person who * * * (2) * * * Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document * * * shall be guilty of a felony * * *."

2. 26 U.S.C. § 6041(a) in part provides: "All persons * * * making payment * * * to another person, of rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable gains, profits, and income * * * of $600 or more in any taxable year * * * shall render a true and accurate return * * * setting forth the amount of such gains, profits, and income, and the name and address of the recipient of such payment."

**40**

dure, according to Beloff and Pipitone, was for one of them to present the tickets at the track window, identify himself, sign a verification slip from which the 1099 form was prepared, and receive the winnings which would then be turned over to Haimowitz or Lichtman in exchange for a commission of 2½ or 3%. Beloff and Pipitone said that they cashed about $100,000 worth of tickets for the defendants in this manner during 1964. They also testified that the defendants assured them that they would be given sufficient losing tickets to cancel the winnings attributed to them and advised them to claim that they were compulsive gamblers if they were ever investigated by the Internal Revenue Service. A third witness, Edward Osterweil, testified to cashing $200,000 worth of winning tickets for Lichtman in the same manner during 1964.

Appellants' main contention appears to be that because the persons to whom the proceeds of the winning tickets were paid gave their correct names and addresses to the race track, the government was in no way defrauded or deprived of information it was entitled to receive. This argument, however, misconstrues the thrust of the charges against appellants and the purpose of sections 6041 and 7206(2).

■■ It is indisputable that section 6041 is intended to help the government locate and check upon recipients of income and the amounts they receive. See United States v. Carroll, 345 U.S. 457, 73 S.Ct. 757, 97 L.Ed. 1147 (1953); S.Rep. No. 103, 65th Cong. 1st Sess. 20 (1917). The evidence at the trial showed that appellants were in fact the winners and true recipients of the payments made by the race tracks and that their scheme of causing the track to record another person as the winner was calculated to defeat the government in its tax collection. In these circumstances it is clear that the government has been defrauded within the meaning of section 7206(2). See United States v. Honer, 253 F.Supp. 400 (S.D.N.Y.1966). To the extent that United States v. Blumberg, 258 F.Supp.

885 (D.Del.1966), cited by appellants, is inconsistent with this conclusion, we do not agree with it.

As we found appellants' other claims of error to be without merit the convictions are affirmed.