UNITED STATES of America, Plaintiff-Appellee,

v.

Irving SNYDER, Defendant-Appellant.

No. 76–1079.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 15, 1976.

Decided Jan. 26, 1977.

C. Scott Crabtree, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty.,

Denver, Colo., on the brief), for plaintiff-appellee.

Gene W. Reardon, Denver, Colo. (Reardon, Reardon & Reardon, a Professional Corporation, Denver, Colo., on the brief), for defendant-appellant.

Before SETH, HOLLOWAY and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Irving Snyder, a so-called "ten percenter," was convicted by a jury on four counts of violating 26 U.S.C. § 7206(2). On appeal Snyder contends that the undisputed facts do not bring him within the terms of the statute under which he was prosecuted. We disagree and affirm.

During the 1974 racing season at the Mile High Kennel Club in Commerce City, Colorado, Snyder on four different occasions received winning tickets from the owners of the tickets and Snyder then presented the tickets to the cashier for payment. The winnings on these four tickets were $2,607.20, $1,026.80, $1,464.60, and $1,982.40, respectively. In each instance the Kennel Club cashier filled out an Internal Revenue Service Information Form 1099 based on information given him by Snyder. Under the heading "To Whom Paid" the cashier printed the name "Irving Snyder," along with Snyder's home address, driver's license number, and his Social Security number. The cashier then noted the amount paid and affixed his own signature thereon. Irving Snyder, in turn, signed his name on the form as being the "signature of payee."[1]

In each instance the owner of the winning ticket, though perhaps not at Snyder's elbow, was standing nearby in the evening shadows making certain that nothing went awry. Snyder, after being given the winnings, in each instance turned the winnings over to the owner. Although two of the owners denied giving Snyder anything for his services, the others gave him approximately ten percent of their winnings, hence the descriptive term "ten percenters."

26 U.S.C. § 6041(a) requires all persons engaged in a trade or business who make payments in the course of such trade or business to another of emoluments or other fixed or determinable gains of $600 or more in any taxable year to render a "true and accurate return to the Secretary or his delegate, under such regulations and in such form and manner . . . as may be prescribed by the Secretary or his delegate, setting forth the amount of such gains, profits, and income, and the name and address of the *recipient* of such payment." (Emphasis added.) Form 1099 is the form prescribed by the Secretary for compliance with 26 U.S.C. § 6041(a), or at least was the form in use in 1974.

26 U.S.C. § 7206(2), the statute under which Snyder was convicted, provides, in part, that any person who in connection with any matter arising under the internal revenue laws willfully aids or assists in the preparation or presentation of any return, claim, or other document "which is fraudulent or is false as to any material matter . . . ." shall be guilty of a felony and punished accordingly.

It is Snyder's position that since Form 1099 contains his true name, correct address and Social Security number, and his own signature, he cannot be guilty of violating 26 U.S.C. § 7206(2), which only proscribes aiding and abetting in the preparation or presentation of a document "which is fraudulent or is false as to any material matter." In other words, according to Snyder, Form 1099 is neither fraudulent nor false. We disagree.

The obvious purpose of Form 1099 is to afford the Internal Revenue Service a record of those who have substantial winnings at race tracks so that, by cross checking, it can later be determined whether the winners have reported their winnings on their individual income tax returns. Some winners prefer to have a third party collect

1. The completed 1099 Forms were periodically turned over to the Internal Revenue Service by the Kennel Club.

their winnings for them, with the third party using his own name when presenting the winning ticket to the cashier for payment. In this manner the winner hopes to lessen the chance that the Internal Revenue Service will somehow learn of his winning efforts. This practice is not confined to Mile High Kennel Club, but goes on at race tracks around the country. As a result, cases similar to the instant one have arisen in other jurisdictions to the end that at least four Circuit Courts have considered argument similar to that advanced by Snyder in the instant case, and in each instance the argument has been rejected.

In several instances the so-called "true owner" of the winning ticket who had another present his winning ticket to the cashier for payment was prosecuted for violating 26 U.S.C. § 7206(2). The defense urged was, as here that the party presenting the winning ticket for payment had used his own true name, and hence Form 1099 was neither false nor fraudulent. Such defense was rejected in *United States v. Dumaine*, 493 F.2d 1257 (1st Cir. 1974); *United States v. Maistrow*, 451 F.2d 1342 (2d Cir. 1971), and *United States v. Haimowitz*, 404 F.2d 38 (2d Cir. 1968).

In other instances the person who was given the winning ticket by the true owner and who thereafter presented the ticket for payment was prosecuted for violating 26 U.S.C. § 7602(2), or conspiring to violate that statute. The fact that the person who presented the ticket for payment used his true name was held not to bar conviction in *United States v. Walsh*, 544 F.2d 156 (4th Cir. 1976), and *United States v. Kessler*, 449 F.2d 1315 (2d Cir. 1971). *See also United States v. Lincoln*, 472 F.2d 1183 (5th Cir. 1973).

A very recent Fourth Circuit case is almost on all fours. *See United States v. Metcalf*, 532 F.2d 752 (4th Cir. 1976). In *Metcalf*, as here, the defendant obtained a winning ticket from the true owner and in cashing it used his own name in filling out Form 1099. The defendant, Metcalf, then delivered over the proceeds to the true owner and was given ten percent for his efforts.

Metcalf argued, as does Snyder in the instant case, that since he used his own true name in the preparation of Form 1099, he could not be convicted under 26 U.S.C. § 7602(2). In rejecting the argument, the Fourth Circuit stated that ". . . Metcalf, by completing the form to indicate that he owned a winning ticket, aided in the presentation of a false document by falsifying it."

It is quite true that Form 1099 uses the phrases "To Whom Paid" and "Signature of Payee." However, Snyder is wrong in believing that *he* was the person to whom the winnings were paid, and that *his* was the signature of the payee. Snyder simply received the winnings in one hand, and with the other hand delivered over the winnings, less ten percent, to the owner of the winning ticket. The true payee was not Snyder, who was only a fleeting conduit, but the owner of the winning ticket who was standing in the background a few feet away from the cashier's window. He was the real recipient of the winnings.

Judgment affirmed.