UNITED STATES of America
v.
John Joseph QUIRK, II.
Cr. No. 19461.

United States District Court
E. D. Pennsylvania.
Oct. 29, 1958.

Harold K. Wood, U. S. Atty., Joseph J. Zapitz, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

John T. Curtin, Philadelphia, Pa., for defendant.

KRAFT, District Judge.

Before us are the defendant's posttrial motions in arrest of judgment, for judgment of acquittal and for new trial, following a determination of his guilt by the court, jury trial having been waived.

Defendant was tried and found guilty only upon the sixth count of an indictment which charged that, in violation of 18 U.S.C.A. § 1001[1], he "willfully and knowingly" caused a lending institution (hereinafter called "Liberty") to submit to the Veterans' Administration (V.A.) in a matter within its jurisdiction an application for Home Loan Guarantee or Insurance (hereinafter called "insurance application") containing false, fictitious and fraudulent statements of the applicant veteran's employment and earnings.

## Motion In Arrest of Judgment

■ The defendant challenges this count of the indictment upon the ground that it should have been drawn under 38 U.S.C.A. § 715[2], a later and, purportedly, a more specific statute, which defendant urges was intended by Congress to proscribe the acts done by him. However, defendant ignores an important distinction between the crimes defined by the two statutes. Section 715 makes criminal certain acts which are done knowingly, but not willfully. Section 1001, on the other hand, penalizes acts which are willfully *and* knowingly done. The actor's state of mind is an element in the crime upon which Congress could and, we think, did base a distinction.

The government elected to proceed under § 1001 and assumed the greater burden of proving the willfulness of the defendant's conduct. The government was not obliged to proceed under the more specific provisions of § 715, where the defendant's acts were willful.

## Motion for Judgment of Acquittal

■■ In support of this motion, the defendant insists that § 1001 requires the false statements to be "material" and argues that the admittedly false statements in this insurance application were not "material" because they were incapable, practically, of affecting or influencing a governmental function.

1. "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

2. "Any person who shall knowingly make or cause to be made, or conspire, combine, aid, or assist in, agree to, arrange for, or in any wise procure the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, or writing purporting to be such, concerning any claim for benefits under sections 701, 702, 703, 704, 705, 706, 707–710, 712–715, 717, 718, 720, and 721 of this title, shall forfeit all rights, claims, and benefits under such sections, and, in addition to any and all other penalties imposed by law, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $1,000 or imprisonment for not more than one year, or both." Although. this statute has been repealed, 38 U.S.C.A. § 715 (Supp.1957), the repeal was not effective until January 1, 1958.

We found that the V.A. rejected the insurance application because the amount requested to be insured exceeded the veteran's remaining entitlement. The defendant contends that the excessiveness of the application precluded its approval by the V.A.; that, accordingly, the exercise by the V.A. of a governmental function could not have been influenced or affected by the false statements and that the false statements were, therefore, not material.

Whether the element of materiality is required by the second clause of § 1001 is a question upon which there is sharp conflict of opinion.[3] We deem it unnecessary to decide that question in this case because we believe that materiality was established.

The difficulty arises in the construction of the accepted test of materiality: whether the "false statement has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made";[4] or, was the statement one that "could affect or influence the exercise of a governmental function."[5]

Defendant urges that no false statement "could affect or influence" or be "capable of influencing" if, because of extrinsic circumstances, the ultimate objective of favorable agency action was impossible of attainment. We disagree because we believe that the conduct Congress intended to prevent by § 1001 was the willful submission to federal agencies of false statements calculated to induce agency reliance or action, irrespective of whether actual favorable agency action was, for other reasons, impossible. We think the test is the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end as measured by collateral circumstances. Freidus v. United States, 1955, 96 U.S. App.D.C. 133, 223 F.2d 598, cited by the defendant, supports this conclusion.

In that case a somewhat similar situation existed. A financial statement, which was the basis of the prosecution, was never actually considered by the agency to which it was submitted because it was regarded as not sufficiently current. There was no actual possibility that the agency would be influenced by or induced to act upon the alleged false statements therein.[6] The court, nevertheless, considered whether the alleged false statements were, in and of themselves, capable of influencing a governmental function and decided, for other reasons, that they were not.[7]

In the present case, having rejected the veteran's insurance application for another reason, the V.A. did not consider and, so, could not have been deceived by defendant's false statements; but those false statements were, in themselves, capable of influencing the agency's decision. The decision which the V.A. would have been required to make was whether or not it would assume the risk of insuring a loan made by Liberty to the veteran applicant. Whether it would assume such risk would depend, to a substantial degree, upon the veteran's ability to repay the loan to Liberty. The false statements submitted by the de-

---

3. Materiality required:
Freidus v. United States, 1955, 96 U.S. App.D.C. 133, 223 F.2d 598, 601–602; Weinstock v. United States, 97 U.S.App. D.C. 365, 231 F.2d 699, 701–702; Rolland v. United States, 5 Cir., 1953, 200 F. 2d 678, 679, certiorari denied 345 U.S. 964, 73 S.Ct. 950, 97 L.Ed. 1383; United States v. Stark, D.C.D.Md.1955, 131 F. Supp. 190; United States v. Lohman, D.C.S.D.Ohio 1953, 127 F.Supp. 432, 434; United States v. Cowart, D.C.D.C. 1954, 118 F.Supp. 903, 905; Contra: United States v. Silver, 2 Cir., 1956, 235 F.2d 375, 377, certiorari denied 1956, 352 U.S 880, 77 S.Ct. 102, 1 L.Ed.2d 80; United States v. Varano, D.C.M.D.Pa. 1953, 113 F.Supp. 867, 868; United States v. Okin, D.C.D.N.J.1955, 154 F. Supp. 553, 555; United States v. Lange, D.C.S.D.N.Y.1955, 128 F.Supp. 797, 798.

4. 231 F.2d at page 701 and cases cited therein.

5. 223 F.2d at page 601.

6. 223 F.2d at page 600.

7. 223 F.2d at pages 601–603.

fendant to Liberty, and in turn, submitted by Liberty to the V.A., that the veteran was gainfully employed and had a "take-home pay" of $75 weekly would have a natural tendency to influence the V.A. to believe that the veteran was an acceptable risk. On this basis we conclude that the false statements were material.

■ As an alternative ground for this motion the defendant argues that the evidence failed to show that he caused the lending institution to submit the insurance application to the V.A., as charged, and that it was the veteran who did so. We were persuaded beyond a reasonable doubt to the contrary.

The evidence showed that the defendant telephoned the application for the mortgage loan to Liberty; that he was aware that Liberty would not accept the application unless the veteran was employed; that he instructed the veteran to make the false statements of his employment and earnings at the forthcoming interview with Liberty's loan officer and wrote the pertinent information on a match cover to insure against failure of the veteran's memory; that the veteran carried out the defendant's instructions; that the loan officer sent a verification of employment form to the purported employer; that the defendant filled in this employment form with information admittedly false and forged thereto the signature of the spurious employer; that the defendant gave it to the lending institution; that in reliance upon the veteran's statements and upon the verification of employment so received, the loan officer directed the formal application for Home Loan Guarantee or Insurance to be filled in and mailed to the V.A. together with the executed verification of employment form. This evidence was ample to support the court's conclusion that Liberty forwarded the insurance application to the V.A. on the strength of the veteran's false statements of employment and earnings, made under the defendant's instructions and supported by the defendant's false verification of employment.

*Motion for New Trial*

We think the reasons assigned in support of this motion are without merit.

*Order*

Now, October 29, 1958, it is ordered that defendant's motions in arrest of judgment, for judgment of acquittal and for new trial are denied. The defendant is ordered to appear for sentence on November 10, 1958, at 10:00 A.M.