Robert E. GOLLAHER and Gollaher
Construction, Inc., a corporation,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 21633.

United States Court of Appeals
Ninth Circuit.

Aug. 19, 1969.

Certiorari Denied Dec. 8, 1969.
See 90 S.Ct. 434.

Earl Klein (argued), and Gerald H. Gottlieb (argued), Beverly Hills, Cal., for appellants.

Michael Heuer (argued), Asst. U. S. Atty., Wm. M. Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Crim. Div., Los Angeles, Cal., for appellee.

Before BARNES and HAMLEY, Circuit Judges, and STEPHENS, District Judge.

STEPHENS, District Judge:

The District Court had jurisdiction of the within case pursuant to Title 18 U. S.C. §§ 307, 1001 and 1010. This court

has jurisdiction pursuant to Title 28 U. S.C. § 1291.

A fifteen count indictment was brought against Robert Gollaher and Gollaher Construction, Inc. and Evelyn Barbee. Barbee withdrew her plea of not guilty, entered a plea of guilty to Count Two and testified for the government at the trial. A verdict was returned on the first six counts only. After the verdict, Barbee was allowed to enter a plea of nolo contendere to Count Two. She was sentenced to one year in prison, but this was suspended and she was placed on probation for one year. All remaining counts against her were dismissed.

Appellants Robert Gollaher and Gollaher Construction were found guilty on Counts One through Six. Count One charged a conspiracy to commit an offense against the United States or an agency thereof. 18 U.S.C. § 371. Other persons were named as co-conspirators, but were not indicted.

Count Two charged a violation of 18 U.S.C. § 1010, which provides that "whoever, for the purpose of obtaining any loan or advance of credit * * * with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance * * * makes, passes, utters or publishes any statement, knowing the same to be false * * * *" has committed an offense against the United States.

Robert Gollaher was denied probation and was sentenced to two years' imprisonment on each count, the sentences to run concurrently. Gollaher was also fined $5,000.00 on each count for a total fine of $30,000.00, with a condition that if the fine were paid within the first year, one year of his sentence would be suspended. Gollaher Construction, Inc. was ordered to pay a fine of $1,000.00 on each of the six counts for a total fine of $6,000.00.

Robert Gollaher was a contractor building homes in the Fresno area. He did business through three companies, to wit, Design Homes by Robert E. Golla-

her, Inc., Gollaher Construction, Inc., and G & B Construction, Inc. To obtain financing, Gollaher instructed Evelyn Barbee, an employee of Gollaher Construction, Inc. to find persons who could qualify for mortgage insurance from the Federal Housing Administration (hereafter F.H.A.) or were entitled to loan guarantees from the Veterans Administration (hereafter V.A.). Persons who could qualify were paid to sign application forms which were used to secure F. H.A. insurance or V.A. loan guarantees for persons desiring to purchase one of Gollaher's homes, but who were not entitled to either F.H.A. or V.A. financing. The application forms contained statements of intent to purchase and occupy the homes, when in fact the qualified persons who signed the applications never intended to purchase or occupy the homes involved. See 38 U.S.C. § 1804(c) and 18 U.S.C. § 1010. Deposit receipts were also prepared and submitted with the applications for financing, indicating that a deposit had been made toward the purchase of the homes involved, when in fact no such deposit had been received.

Financing was arranged through T. J. Betts Company and Central Securities Mortgage Company. These companies would transmit the documents to the V. A. and F.H.A. and would then make F. H.A. insured or V.A. guaranteed loans in the names of the persons who could qualify for F.H.A. insurance or V.A. guarantee. Actually the loans were obtained for Gollaher's prospective purchasers who were not qualified for V.A. or F.H.A. financing.

On December 23, 1965, the Veterans Administration notified Gollaher and Gollaher Construction, Inc. that the V.A. would refuse to appraise any properties owned, sponsored or to be constructed by them and all persons acting on their behalf. The Administrator was authorized by 38 U.S.C. § 1804(b) to take such action upon finding that the methods or practices pursued in relation to the marketing of such properties were unfair or unduly prejudicial to veteran purchasers.

Appellants were also notified that they had a right to a hearing upon request. On December 28, 1965, Gollaher and Gollaher Construction, Inc. were notified by the F.H.A. that all further applications for mortgage insurance submitted by them would be rejected on the ground that they had been suspended by the Veterans Administration.

Some of the purchasers who were not qualified for the government financing moved into homes purchased from Gollaher and received payment books in which the name of a qualified applicant would appear. Payments were made in the name of the qualified applicant. In several cases, the actual purchasers defaulted in the payments and after foreclosure, a deficiency existed. The government then looked to the veterans or other qualified persons whose names appeared on the application forms.

The various reasons assigned for reversal are separately considered below:

### Gollaher's Testimony before the Grand Jury

Appellants contend that "the conviction must be reversed because appellant Gollaher was compelled to testify before the grand jury after suspicion had already focused on appellants."

Appellants argue that Gollaher was in reality a defendant compelled by subpoena to testify. His position before the grand jury is equated with the position of a defendant undergoing custodial interrogation. It is contended that Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), demand that the same safeguards be provided to witnesses before the grand jury as to persons in custody. Appellants maintain that Gollaher was not properly advised of his privilege against self-incrimination, that he was not permitted to have counsel present while testifying before the grand jury and that, therefore, the prosecution should not have been allowed to use his grand jury testimony at the trial.

■■ It should also be noted that no objection was made to the questions on cross-examination which elicited this testimony. What the cross-examination would be on this subject was well known to defense counsel and what the testimony would be was equally well known. There is no excuse for not interposing timely objection so that the trial court could rule in the context of the examination. This point was not preserved for appeal. Appellants argue that the pretrial motion to dismiss the indictment because of what took place before the grand jury sufficiently raised the objection and preserved it on appeal. It is too apparent to require exposition that the motion was made in an entirely different context.

■ The argument is made that Gollaher's testimony before the grand jury was used not only to impeach Gollaher, but as affirmative evidence. In fact, the testimony was introduced as impeachment and it was effective for this purpose. The affirmative weight of this evidence was incidental to its principal purpose. Its admission into evidence was not error.

■ The statements made by Gollaher before the grand jury were admissible to impeach the testimony he gave at the trial. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); United States v. Armetta, 378 F.2d 658 (2nd Cir., 1967); Inge v. United States, 123 U.S.App.D.C. 6, 356 F.2d 345; United States v. Curry, 358 F.2d 904 (2nd Cir., 1965); Bailey v. United States, 117 U.S.App.D.C. 241, 328 F.2d 542 (D.C.Cir., 1964).

■ It was not error to deny defendant's motion to dismiss the indictment. The record shows that Gollaher was adequately advised as to his Fifth Amendment rights and he was not entitled to have counsel present with him while he testified before the grand jury. See Rule 6(d) of the Federal Rules of Criminal Procedure and the following cases: In re Groban, 352 U.S. 330, 333, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957); United

States v. Luxenberg, 374 F.2d 241 (6th Cir., 1967); Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863, 882 (D.C.Cir., 1964); United States v. Wolfson, 282 F.Supp. 772, 775 (S.D.N.Y., 1967); In re Weiss, 279 F.Supp. 857, 859 (S.D.N.Y., 1967); United States v. Kane, 243 F.Supp. 746, 753 (S.D.N.Y., 1965).

■ We are not here called upon to reexamine the rule announced by this court in Groshart v. United States, 392 F.2d 172 (9th Cir., 1968), pertaining to the use, for impeachment purposes, of statements obtained from a defendant in violation of the rule announced in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Appellant, while present before the grand jury pursuant to a subpoena, was not then in police custody and the *Miranda* rules were for that reason not applicable to his grand jury interrogation.

### Double Jeopardy

■ Appellants' next alleged error is that placing them on trial after suspension by the Veterans Administration constituted double jeopardy, double punishment, and cruel and unusual punishment.

The homes which were being constructed were in a price range which did not attract ordinary bank financing. Financing depended upon availability of F.H.A. mortgage insurance and V.A. loan guarantees. After the suspension by the V.A., appellants requested a hearing. The United States Attorney, however, requested that the hearing be held in abeyance until the criminal aspects of the case were concluded. The Chief Benefits Director, pursuant to 38 C.F.R. § 36.431b and in keeping with the V.A. policy to cooperate with the Department of Justice, deferred hearing. Appellants claim that the financial pressure which resulted from the V.A. action forced the sale of their interest in a housing tract at a loss approaching $1,500,000.00 and that the United States Attorney's involvement in the suspensions rendered the suspensions criminal penalties.

The argument is without merit. Appellants have no vested right to V.A. or F.H.A. financing. Their financial problems were the product of the character of the construction and the condition of the money market. They were entitled to a hearing, but faced the possibility that it might be deferred. Deferment of such a hearing for any reason would bring about the financial squeeze which they actually did have to face.

The power given the Veterans Administration to suspend the appraisal of appellants' property was designed to protect the interest of veterans and the government where the methods or practices pursued in relation to the marketing of such properties are unfair or unduly prejudicial to purchasers. It was not designed to punish the builder.

Since the suspension was not intended to be punitive, it was not a criminal sanction and, therefore, the double jeopardy provision of the Fifth Amendment is not applicable. Helvering v. Mitchell, 303 U.S. 391 at 399, 58 S.Ct. 630, 82 L. Ed. 917 (1938).

### Coercion of Witnesses by The Prosecution

Appellants contend that the government witnesses, to wit, Mrs. Barbee, Lloyd McDaniel and Charles Barboza, were coerced into testifying against the appellants, and that this action violated appellants' rights under the Fourth and Fifth Amendments.

The charge of coercion is based upon the following testimony elicited from Barbee, Barboza and McDaniel by appellants on cross-examination in an effort to impeach the three government witnesses: Prior to March 3, 1965, Mrs. Barbee was contacted several times by agents of the Federal Bureau of Investigation, but refused to meet with them to discuss the properties involved in this case. On March 3, 1965, she was summoned before the grand jury. She was obviously a potential defendant. She was told that the government was not trying to twist her arm, but that any cooperation would be made known to the

court at the time of sentencing. It seems to have been assumed that she would be indicted and convicted in due course. Mrs. Barbee met with United States Attorney Miller in the morning before each day of trial.

Mr. Barboza, the general manager of Gollaher Construction, Inc., testified at the trial that in his first session before the grand jury he denied all knowledge of the matter which later ripened into the indictment. Before his next appearance before the grand jury, Barboza had a conversation with United States Attorney Miller during which Miller advised him that perjury before the grand jury was a federal crime punishable by imprisonment. During the grand jury proceeding, Barboza was also told that other witnesses had indicated to the F.B.I. that he had knowledge of the procedure used by Gollaher Construction, Inc. in purchasing G.I. eligibility for government financing. Barboza then admitted discussing this procedure with Robert Gollaher.

Lloyd McDaniel, Gollaher's brother-in-law and one of the veterans whose eligibility was used to obtain a V.A. loan guarantee, testified that he was interviewed by agents of the F.B.I. in February, 1964, but did not tell the truth. He was subpoenaed before the grand jury and was told he was a "witness-defendant." He appeared twice before the grand jury. At trial he testified that during his first appearance before the grand jury, he was not truthful. At this time a recess was suggested by Assistant United States Attorney Mitchell, who told McDaniel that other persons had testified before the grand jury; that he, Mitchell, believed that McDaniel was being untruthful and that McDaniel should go into a witness room and think about these matters.

McDaniel testified that this procedure upset and scared him. When he returned to the grand jury room, he was asked if he wanted to change or add to statements formerly made to the F.B.I. McDaniel testified that at the time he gave a statement to the F.B.I. he was afraid he would be arrested. The subject of a metal box was brought up. The box apparently contained information which would incriminate McDaniel. He refused to give his consent to have the box produced. He was asked if the contents would tend to incriminate him and told that he could invoke the Fifth Amendment. He was reminded of the perjury statute, and told that he had not been truthful with the grand jury.

Appellants argue that this procedure constituted coercion which violated the rights of three government witnesses and that the use of evidence so obtained to convict appellants was a violation of appellants' rights under the Fourth and Fifth Amendments. In support of this argument, appellants cite People v. Martin, 45 Cal.2d 755, 290 P.2d 855 (1955), where the court suggests that a defendant's right to object to the use of evidence seized in violation of the rights of a co-defendant must rest, not on a violation of the defendant's own constitutional rights, but on the ground that the government not be allowed to profit by its own wrong and be thus encouraged in the lawless enforcement of the law.

■ The issue of standing of a defendant to object to the introduction of evidence seized in violation of the rights of one other than the defendant was considered by the Judges of the Ninth Circuit en banc. Diaz-Rosendo v. United States, 357 F.2d 124 at 130 (9th Cir. 1966). Following the teaching of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) and F.R.Cr.P. 41(c), the court held that a defendant did not have standing to object to the admissibility of evidence seized in violation of the rights of one other than the defendant. See also, United States ex rel DeForte v. Mancusi, 379 F.2d 897, 904, n. 11 (2nd Cir., 1967); United States v. Bozza, 365 F.2d 206, at 222 (2nd Cir., 1966); Goldstein v. United States, 316 U.S. 114 at 121, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942).

■ The right of witnesses to refuse to incriminate themselves is a personal

right. Bowman v. United States, 350 F.2d 913 at 915 (9th Cir., 1965). They can waive that right and their failure to assert that right is nothing about which appellants are entitled to complain.

■ It is also significant to note that appellants did not object to the testimony of the three government witnesses at trial, but instead attempted to impeach them by eliciting evidence of alleged coercion on cross-examination.

### Testimony of Financial Loss

■ Appellants maintain that they were prejudiced by the admission of testimony and remarks concerning financial loss sustained by the government and other individuals as a result of defaults by several of Gollaher's purchasers. It is argued that since evidence of financial loss was not a necessary part of a violation of 18 U.S.C. § 1001, Morgan v. United States, 301 F.2d 272 at 275 (9th Cir., 1962); United States v. Godel, 361 F.2d 21 at 24 (4th Cir., 1966), it should have been excluded.

Analogous objections have been raised in other cases charging a violation of 18 U.S.C. § 1001 and the statute from which § 1001 was derived, to wit, 18 U.S.C. § 80. Bartlett v. United States, 166 F.2d 920 at 923 (10th Cir., 1948); United States v. Blumberg, 258 F.Supp. 885 at 887, n. 1 (D.Del., 1966).

Gormley v. United States, 167 F.2d 454 (4th Cir., 1948), is especially significant. Defendant was charged with altering several copies of a sales document presented to the War Assets Administration for shipment of a large quantity of melton cloth. The original sales document indicated a sale of 10,000 yards of cloth for which the defendant gave his check for $24,000.00. The sales document was altered to indicate the sale had been 40,000 yards at a cost of $96,000.00. The altered document was presented to the Quartermaster's Department where instructions were issued to warehousemen to fill the order and ship the goods in accordance with the altered document. The defendant had arranged to sell the larger amount to a buyer from New York.

At trial the government introduced defendant's check for $24,000.00 with which the defendant paid for the 10,000 yards of cloth, defendant's bank record on the day he drew the check indicating a balance of $41.18, and evidence of the fact that the check had been dishonored. Defendant charged that this evidence was irrelevant to the actual crime charged and tended to prejudice the minds of the jurors, to which the court answered, "We think this evidence was admissible in order to give the jury a full picture of the whole transaction." (167 F.2d at 458).

As in Gormley v. United States, this evidence helped to give the jury a full picture of the situation.

### Misconduct of Prosecutor

■ It is alleged that the prosecution was guilty of misconduct in phrasing questions in a prejudicial manner and in making reference to the conviction of one James Tripp for an offense similar to that for which appellants were indicted.

Appellants cite several examples where the prosecution inquired about "false statements," "false practices," and "false documents." Objection was made and it is argued that the inquiries assumed things not in evidence, were leading, conclusionary and prejudicial. This manner of asking questions was conclusionary, objectionable and bad practice, but in this case not prejudicial. It did not affect substantial rights of the appellants and, therefore, should be disregarded. F.R.Cr.P. 52(a).

The prosecution, after inquiring of Mr. Gollaher as to his association with Mr. Tripp, asked, "and you knew that Mr. Tripp was convicted in this court in 1965 for filing false statements to the F.H.A., didn't you?" Appellants moved for a mistrial. The court denied the motion and instructed the jury as follows: "The last question and answer [none was given] I am striking from the record. I feel that the association

with Mr. Tripp would have no bearing on this man's guilt or innocence." When considered with the entire record, the weight of the other evidence against Gollaher and the court's admonition to the jury, the question does not require reversal.

### Defense Inspection of Testimony before The Grand Jury

Appellants allege that they were deprived of the right of presenting their defense in that the court would not permit inspection of the transcript of the testimony of one Morgan and Knapton before the grand jury.

 Knapton and Morgan were real estate brokers on the housing tracts built by Gollaher. Although they testified before the grand jury, they were not called to testify at the trial. Appellants argue that there is an implication from the prosecution's failure to call the two men that their testimony would have been helpful to the defense. Appellants maintain that they could not risk calling them as witnesses for fear they may have been impeached by their grand jury testimony, and therefore, it is argued that by refusing to allow the defense the opportunity to inspect the transcript of their testimony, appellants were deprived of the defense of potentially helpful witnesses.

Appellants rely on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

The *Brady* case is distinguishable from the one at bar. Brady and a companion Boblit were tried separately and found guilty of murder. Brady testified and admitted participation in the crime, but claimed that Boblit did the killing. Prior to the trial, Brady's attorney asked to examine Boblit's extrajudicial statements. In one of these statements, Boblit admitted the actual homicide. Brady's attorney was shown some of the statements, but the confession was withheld. The court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1197.

Appellants were in a much different position in this case. They could have called Knapton and Morgan to testify. Brady could not have called Boblit to testify for Boblit had a right to refuse to be called. Further, it is apparent that Brady and his attorney were deceived. This is not true in the present case. Appellants knew where to find the testimony they felt may have been helpful in their defense and could have used it subject to the risk of impeachment.

Reliance on Dennis v. United States, supra, is likewise misplaced. In that case the court dealt with a petitioner's contention that the trial court committed reversible error by denying a motion to require the production of the grand jury testimony of four government witnesses for examination. All four of the witnesses testified at the first trial; three of the four witnesses testified at the second trial. The Supreme Court noted that there was no justification for relying on the assumption of the Court of Appeals that it is "safe to assume" no inconsistencies would have come to light if the grand jury testimony had been examined [384 U.S. at 874, 86 S.Ct. 1840], and held that petitioners were entitled to examine the related grand jury minutes and to do so while those witnesses were available for cross-examination. The distinction between *Dennis* and the present case is clearly that Knapton and Morgan never testified at trial.

### Defense Inspection of Intra-Agency Communications

 Appellants claim that intra-agency communications might have shown that the F.H.A.'s attitude in pursuing the prosecution was one of bias and that it was error not to permit inspection of such communications.

While "the determination of what may be useful to the defense can properly and effectively be made only by an advocate," [Dennis v. United States, supra at 875, 86 S.Ct. at 1851] the materials upon which such a determination is sought to be made must in the first instance be discoverable, a prerequisite absent in this case. Federal Rules of Criminal Procedure, Rule 16(b) provides in part that the discovery authorized by Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case * * *." There are two exceptions. The first is the authorization of inspection of any relevant results or reports of physical or mental examinations, scientific tests or experiments made in connection with the particular case. The second relates to the right in a criminal prosecution to inspect a statement or report in the possession of the United States which was made by a government witness or prospective government witness after said witness has testified on direct examination in the trial of the case. 18 U.S.C. § 3500. Neither exception is applicable in the present case.

## Sufficiency of The Evidence

 Counts Four, Five and Six of the indictment charged that appellants represented to the V.A. that a $25.00 deposit had been received toward the purchase price of properties sold by appellants while they well knew no such deposits had been received. Count One also included a reference to such deposits.

Appellants maintain that this misrepresentation was not of a material fact in that counsel for the V.A. testified that the V.A. does not require a down payment and the approval or rejection of home financing would not have turned on the existence or absence of such a deposit.

The pertinent statute, Section 1001 of Title 28 was examined in United States v. Silver, 235 F.2d 375 at 377 (2nd Cir., 1956) and that court made the following observations:

"Section 1001 contains two clauses. The first relates to the willful falsification or concealment by 'trick, scheme, or device' of a 'material fact;' the second covers 'false, fictitious or fraudulent statements or representations.' The indictment [as does the indictment in the present case] charged a crime under the second clause, which unlike the first, does not include the term 'material.'"

In Fisher v. United States, 231 F.2d 99 at 102 (9th Cir., 1956), the court noted that "the language of Section 1001 seems to justify such a construction."

The case of Brandow v. United States, 268 F.2d 559 (9th Cir., 1959), recognizes a sharp division of authority on this point. The opinion quotes with approval from the case of United States v. Quirk, 167 F.Supp. 462 at 464 (ED.Penn., 1958), as follows:

"[W]e believe that the conduct Congress intended to prevent by § 1001 was the willful submission to federal agencies of false statements calculated to induce agency reliance or action, irrespective of whether actual favorable agency action was, for other reasons, impossible. We think the test is the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end as measured by collateral circumstances."

In the instant case, the representations that a $25.00 deposit had been made were intended to induce the V.A., an agency of the United States, to guarantee a loan to the applicant. The representations of the application, including that a $25.00 deposit had been made, were relied upon. There were no collateral circumstances which prevented agency action as in United States v. Quirk. This is not a prosecution based upon a false statement in an application which did not produce results. It is unnecessary to speculate as to what the

agency would have done with the application if the application had shown that no deposit had been made. A deposit, even if small in amount, is earnest money, an indication of the sincere intention of the applicant. The misrepresentation was calculated to make the application more appealing and if it had been known that the representation was false, the agency action would most certainly have been affected. The representations were intended to be and were material representations. The collateral circumstance that the agency would not have insisted upon such a deposit is immaterial.

Count Two charged that appellants knowingly and willfully made a false statement to the F.H.A. to the effect that Design Homes by Robert Gollaher had received $400.00 from Lloyd McDaniel as a deposit on a home and that this was done with the intent that a loan made to McDaniel be offered to the F. H.A. for insurance. The defense was that Gollaher gave McDaniel the down payment as a wedding gift. McDaniel testified at trial that he did not pay a deposit of $400.00 toward the purchase of the home involved. Although there was testimony to the contrary and testimony to the effect that Robert Gollaher had given McDaniel money as a wedding present, the court must view the evidence in a light most favorable to the prosecution. Glasser v. United States, 315 U.S. 60 at 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

Appellants also maintain that there was no evidence whatsoever that appellant corporation was involved in any of the transactions charged. It was the prosecution's theory that Design Homes, Inc. and G & B Construction, Inc. were subsidiaries of Gollaher Construction, Inc. and therefore the parent entity would be responsible for the actions of its subsidiaries. Appellants assert that the evidence showed that each corporation was a separate entity. In fact, the evidence was in conflict. Gollaher's testimony before the grand jury was introduced on cross-examination wherein Gollaher stated that Gollaher Construction,

Inc. had two subsidiaries, to wit, G & B Construction, Inc. and Design Homes, Inc. On direct examination at the trial, Gollaher testified that Design Homes, Inc. was the corporation that did the subdivision work, built and sold the homes involved and that Gollaher Construction, Inc. did not have anything to do with the transactions involved.

Again, viewing the evidence in a light most favorable to the prosecution, Glasser v. United States, supra, there was sufficient evidence for the jury to conclude that Design Homes, Inc. was a subsidiary of Gollaher Construction, Inc. and the latter was responsible for the acts committed by Design Homes, Inc.

### Sentencing Procedure

As a final contention, appellants assert that the sentencing procedure violated Robert Gollaher's right to a jury trial and his privilege against self-incrimination.

In support of this last point, appellants assert that at the time of sentencing, appellants' attorney recommended probation with a suitable fine. The trial judge rebuked appellant Gollaher for his failure to confess to the crimes of which he was convicted and took this failure into consideration in setting sentence.

Gollaher was facing the possibility of a sentence of five years and a $10,000.00 fine on each of Counts One, Three, Four, Five and Six, and a possible sentence of two years' imprisonment and a $5,000.00 fine on Count Two. He was denied probation and sentenced to two years on each count to run concurrently and a $5,000.00 fine on each count for a total fine of $30,000.00. In the sentence there was a condition that if the fine were paid within the first year, one year of his sentence would be suspended.

Suspension of sentence and probation is provided for by 18 U.S.C. § 3651. The trial court may, when satisfied that the ends of justice and the best interest of the public, as well as the defendant, will be served thereby, suspend the imposition or execution of a sentence and

place a defendant on probation for such a period and upon such terms and conditions at the court deems best.

The power given the trial court under § 3651 to suspend a sentence and grant probation is vested in the sound discretion of the court and its refusal to suspend the sentence is not reviewable on appeal except for arbitrary or capricious action amounting to a clear abuse of discretion. Elder v. United States, 142 F.2d 199 (9th Cir., 1944); Mann v. United States, 218 F.2d 936 (4th Cir., 1955); Heidrich v. United States, 373 F.2d 540 (5th Cir., 1966). Probation is granted to a defendant as a privilege and not as a right. Bryson v. United States, 265 F.2d 9 (9th Cir., 1959).

Appellants rely on Thomas v. United States, 368 F.2d 941 (5th Cir., 1966). The case dealt with a collateral attack pursuant to 28 U.S.C. § 2255 on the length of a sentence where prior to imposing sentence, the judge advised the defendant that he had no doubt as to his guilt and that if the defendant confessed his guilt, the court would take that into account in the length of sentence imposed. Thomas and two co-defendants were indicted for bank robbery under 18 U.S.C. § 2113(a) and (d). The two co-defendants pleaded guilty. Thomas pleaded not guilty and was tried to a jury, convicted and sentenced to the maximum term permitted, to wit, 25 years. The Fifth Circuit noted that since the defendant persisted in his claim of innocence, the colloquy prior to the imposition of sentence did not ripen into an actual infringement on his Fifth Amendment rights. The court, however, vacated the sentence, giving the District Judge an opportunity to again sentence the defendant.

This case presents a dilemma which every trial judge faces at the time of sentence. It is almost axiomatic that the first step toward rehabilitation of an offender is the offender's recognition that he was at fault. In the present state of the criminal law, there is no doubt that punishment is still a consideration in the imposition of sentence, especially where non-violent or economic crimes are involved. But to the extent that rehabilitation is the objective, no fault can be found of the judge who takes into consideration the extent of a defendant's rehabilitation at the time of sentence.

If the trial judge makes no mention of his thoughts on this subject, any sentence within legal limits will stand against attack. But, if the judge tells the defendant what he has in mind, the judge can anticipate an attack upon the sentence similar to the one at hand. No matter how artfully it may be put, the defendant will know that if he acknowledges that he has come to recognize his guilt, this may well result in a lesser sentence. He is then up against a hard choice of whether to forego some potential attacks upon the judgment or face a stiffer sentence. If he makes the latter choice, and his conviction is upheld, he is forced to rely upon the action of the Board of Parole. If he is in fact innocent, then he must have faith that this will ultimately be established and act accordingly. On the other hand, after the defendant has been convicted, the judge must proceed upon the basis that the defendant is guilty.

Justice is better served by a forthright disclosure of the state of mind of the judge. While the considerations thus exposed are difficult, at least the defendant has the advantage of knowing what they are and can make his decisions accordingly. A proper sentence takes into consideration the kind of crime committed and the kind of man who committed it. To belabor a distinction between the considerations just discussed and a sentence which is in part imposed as a penalty for going to trial would be a waste of time.

Gollaher chose to insist upon his innocence. The judge, bound by the jury's verdict and apparently also being firmly convinced by the evidence that Gollaher was guilty, proceeded accordingly. He had before him a man unwilling to take the first step toward rehabilitation and

he imposed sentence accordingly. Gollaher's Fifth Amendment rights were not infringed.

Judgment affirmed.

### ORDER

The panel as constituted in the above case has unanimously voted to deny the petition for a rehearing, and to reject the suggestion for a hearing en banc.

The full court has been advised of the suggestion for an en banc hearing, and no judge of the court has requested a vote on the suggestion for a rehearing en banc. Fed.R.App.P. 35(b).

The said panel has withdrawn the original opinion in this case, dated December 19, 1968, and filed an amended opinion in lieu thereof.